# ILLINOIS OFFICIAL REPORTS

## Supreme Court

*Mashal v. City of Chicago*, 2012 IL 112341

| | |
|---|---|
| Caption in Supreme Court: | GAZI H. MASHAL, Indiv. and in Representative Capacity of All Those Similarly Situated, Appellant, v. THE CITY OF CHICAGO *et al.*, Appellees. |
| Docket No. | 112341 |
| Filed | December 13, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A "decision on the merits" precluding decertification of a class is something which, short of a final judgment involving remedies, establishes a right to recover in at least one class member by a complete determination of liability as to a claim based on the facts disclosed by the evidence. |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Stuart E. Palmer, Judge, presiding. |
| Judgment | Appellate court judgment affirmed.<br>Cause remanded. |

Counsel on
Appeal

Leo M. Bleiman, Andrew P. Lamis, Donald A. LeBoyer, David A. Novoselsky and Brian A. Schroeder, all of Chicago, for appellant.

Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper and Suzanne M. Loose, of counsel), for appellees.

Justices

JUSTICE THOMAS delivered the judgment of the court, with opinion.
Chief Justice Kilbride and Justices Garman, Karmeier, Burke, and Theis concurred in the judgment and opinion.
Justice Freeman specially concurred, with opinion.

## OPINION

¶ 1      This appeal arises from a class action lawsuit filed in 2000 by plaintiff Gazi Mashal against defendants, the City of Chicago and various City officials in their official capacity. The class was certified in 2002, but was decertified in 2008, when the circuit court of Cook County determined that a partial summary judgment order entered in 2005 resolved the overriding legal issue, thereby destroying the commonality requirement for a class action because common questions no longer predominated over any questions affecting only individual members (735 ILCS 5/2-801 (West 2004)). Thereafter, the circuit court eventually certified four questions for interlocutory review under Illinois Supreme Court Rule 308 (eff. Feb. 1, 1994). Those four questions hinged on whether the 2005 ruling, which granted partial summary judgment on the legal issue on which the case was premised, constituted a "decision on the merits" after which time the entry of a class decertification order would be precluded under section 2-802(a) of the Code of Civil Procedure (the Code) (735 ILCS 5/2-802(a) (West 2004)). The appellate court answered the four certified questions in favor of the City. 408 Ill. App. 3d 817. We now affirm the appellate court.

¶ 2                              BACKGROUND

¶ 3      Gazi Mashal is a taxi driver in the City of Chicago. In September 2000, he filed the instant suit in the circuit court of Cook County to challenge the City's issuance of "fly-by traffic citations" or "flying tickets," which is service of a ticket by mail, without first having attempted to serve notice at the scene of the parking or standing violation by handing the ticket to the driver or placing it on the offending vehicle. Mashal alleged that the City and its police department have adopted a policy and practice of issuing fly-by traffic citations "after the fact, without the officer confronting the driver." He further alleged that the practice violates a state statute and a municipal ordinance requiring that when a Chicago police officer or other authorized City employee observes a vehicle parked or standing in violation of any provision of the Municipal Code of Chicago, an initial notice of the violation should

be handed to the driver or affixed to the vehicle, and a second notice should be mailed to the vehicle's registered owner. See 625 ILCS 5/11-208.3(b)(3), (b)(5)(i) (West 2010); Chicago Municipal Code § 9-100-30(b) (amended Feb. 10, 2009), § 9-100-050(d) (amended Dec. 7, 2005). Mashal requested injunctive relief, along with damages for himself and other taxi drivers who paid fines or incurred other penalties and expenses in connection with fly-by traffic citations during the 10 years before the action was filed.

¶ 4    Mashal moved to certify as a class all Chicago taxi drivers who were issued "fly-by" citations and, as a result, were subject to any of the following: penalties or fines; vehicle seizure; or suspension or revocation of a taxi chauffeur's license or driving privileges. In support of his motion, Mashal presented affidavits of 30 purported class members stating that they had received fly-by traffic citations. Cook County circuit court Judge Richard Siebel entered a class certification order on July 25, 2002, finding that "a class should be certified at this time." In so doing, Judge Siebel defined "fly-by citations" as a situation "where a police officer or parking enforcement employee notes the number of the offending taxicab without approaching or confronting the taxicab driver, and a violation of notice is mailed to the taxicab licensee with a noted date, location, and time of violation."

¶ 5    In March 2005, Mashal filed a motion for partial summary judgment on the City's "liability" for issuing the citations. Mashal asked the court to decide the legality of the City's alleged practice of issuing fly-by traffic citations. Mashal argued that the City does indeed have a practice of issuing "fly-bys" and that such a practice violates provisions of the Illinois Vehicle Code and the Chicago Municipal Code. See *id.* In support of his motion, Mashal attached the affidavit of his attorney, Leo Bleiman, which asserted that he was contemporaneously filing the affidavits of 211 taxi drivers and class members who were attesting that they had received fly-by citations.

¶ 6    In July 2005, the City filed its own motion for summary judgment, as well as a response to Mashal's motion for partial summary judgment. In response to Mashal's arguments, the City first argued that Mashal was misreading the applicable provisions of the Illinois Vehicle Code and the Chicago Municipal Code, and that those provisions do not preclude serving initial notices of violation by mail. In any event, the City argued, the facts did not support the notion that there was in fact a practice on the part of the City to issue fly-by citations. The City offered counter evidence that the issuance of flying tickets was infrequent, noting that Lieutenant Maureen McMahon testified in her deposition that she was the Chicago police department's commanding officer of Loop traffic. According to Lieutenant McMahon, she supervised 113 traffic control aides in downtown Chicago, and the City's practice has been for traffic control aides to hand violation notices to drivers or affix them to the cars, except where, as happens infrequently, the driver becomes confrontational or drives away before that can be done, in which case notice is served by mail. This was also the practice of the City before she was assigned to her position in November 2002.

¶ 7    The City also raised a number of affirmative defenses. It argued that the putative class members were barred from litigating their claims because they failed to first challenge the citations at the department of administrative hearings. The City also argued that the claims were barred by *res judicata*, collateral estoppel, the voluntary payment doctrine and failure to exhaust administrative remedies.

¶ 8        On December 9, 2005, Judge Siebel granted Mashal's motion for partial summary judgment and denied the City's motion for summary judgment. In so doing, the judge characterized Mashal's motion as seeking a declaration as to the legality of issuing fly-by tickets. He noted that the legal question of whether the issuance of initial notice of parking or standing violations by mail violates the statute or ordinance is a matter of first impression in Illinois. He then found that both the provisions of the statute and ordinance provide for "the same and only two methods for providing initial delivery to a purported violator." The first method is by directly delivering the violation notice or complaint to the driver. The second method is by affixing the violation notice or complaint to the motor vehicle that is in violation of the law. The judge concluded:

> "Mashal's motion for partial summary judgment is granted, the Court declaring that the practice of sending a second notice prior to an initial notice being either hand delivered to the driver or affixed to the vehicle violates the plain language of the Statute and Ordinance."

Finally, the judge did not address the question of whether the City in fact had a practice of issuing fly-by citations, nor did he address whether any fly-by citations had in fact been issued. Instead, he stated that the "court makes no declaration as to the remaining issues for the reason that genuine issues of material fact exist as to the number of 'fly-by' tickets issued by the City during the relevant time period."

¶ 9        In September 2006, the City filed a motion for partial summary judgment based on the contention that the class claims were time-barred, except those arising within the one-year limitations period of section 8-101 of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/8-101 (West 2006)) or, alternatively, within the five-year limitations period of section 13-205 of the Code of Civil Procedure (735 ILCS 5/13-205 (West 2006)). Judge Siebel, who had handled the case up to this point, retired and was replaced by Judge Stuart Palmer. Judge Palmer found that the five-year statute of limitations applied and held that all claims before September 13, 1995, were barred.

¶ 10       In January 2007, the City moved to decertify the class, arguing that because of Judge Siebel's resolution of the predominate legal issue in the case, it became clear that individual issues now predominate over common issues such that class certification was no longer warranted. In response, Mashal took the position that liability was no longer an issue and that only damages remained to be determined. Mashal relied upon the more than 200 affidavits of the taxi drivers that he had submitted.

¶ 11       Judge Palmer granted the City's motion to decertify the class in July 2008. He found that the credibility of Mashal's affidavits was seriously questioned by the City and that they were not undisputed, as Lieutenant McMahon testified that officers were permitted to mail the notice of citation only when service on the street was frustrated, *i.e.*, only after attempting to personally serve the taxi driver or affix the citation to the vehicle. Judge Palmer found that Judge Siebel's December 2005 order was in essence a declaratory judgment with regard to the legality of an alleged practice. Judge Palmer further found that plaintiffs' repeated argument that Judge Siebel's ruling foreclosed liability was nothing more than "an effort to mischaracterize" Siebel's ruling.

¶ 12 Judge Palmer noted that Judge Siebel's December 2005 order did not address those instances where service was frustrated by the driver, either when the driver became confrontational or drove away when he saw the officer approaching. Judge Palmer concluded that the City was entitled to a trial for each and every ticket because it maintains that in 100% of the cases, the officer either unsuccessfully attempted to serve the citation but was frustrated by the driver, or the citation was in fact affixed to the vehicle, but it was removed by the wind or some other agency.[1] The court noted that based on Mashal's estimation of the number of claimants, as many as 16,000 trials would have to be held to determine liability. The court concluded that as a result of changed circumstances since the original certification order,[2] commonality no longer exists and class action is no longer an appropriate method for the fair and efficient adjudication of the controversy.

¶ 13 Mashal filed a motion in the circuit court under Illinois Supreme Court Rule 308 (eff. Feb. 1, 1994) to certify a single question for interlocutory review: whether Judge Siebel's December 2005 order granting Mashal partial summary judgment was a "decision on the merits" such that a subsequent judge lacked authority under section 2-802 of the Code to decertify the class. The circuit court denied the motion.

¶ 14 Mashal then filed a motion for a supervisory order in this court. In July 2009, this court entered a supervisory order directing the circuit court to certify the following four questions for appeal pursuant to Supreme Court Rule 308:

I. What is a decision on the merits under section 2-802 of the Code that would preclude the entry of a class decertification order?

II. Whether, in a class action challenging defendants' practice of issuing parking or standing violations to taxi drivers and others by mail and without any personal service on the driver or placement of the citation on the offending vehicle, a prior judge's ruling that the defendants' "practice of sending a second notice of a parking or standing violation prior to an initial notice being either hand delivered to the driver of the vehicle or affixed to the vehicle is violative of the plain language of the operative statute and the ordinances" constitutes a decision on the merits under section 2-802 of the Code such that a subsequent judge presiding in the case lacks the authority to decertify the class.

III. Whether, in a class action challenging defendants' practice of issuing parking

---

[1]The City also argued that the drivers themselves may have received the tickets at the site—either in hand or affixed to their vehicles—but then simply threw the tickets away, or simply forgot about them and later claimed that they were never originally served at the scene. Additionally, the City argued that the mail notice itself was not proof that a fly-by situation had occurred because the ordinance calls for follow-up mail notice after the initial service. Thus, there is no way to distinguish from the face of the notice itself whether the mail notices that the drivers produced in this case were the first notice that the driver actually received of his violation.

[2]Lieutenant McMahon's deposition testimony—that the only time these citations are served by mail in the first instance is when service is frustrated—was given three years after the original certification order.

or standing violations to taxi drivers and others by mail and without any personal service on the driver or placement of the citation on the offending vehicle, a prior judge's ruling that denied the defendants' motion for partial summary judgment on the application of their affirmative defenses of failure to exhaust administrative remedies, *res judicata*, the collateral attack doctrine, and the voluntary payment doctrine constitutes a decision on the merits under section 2-802 such that a subsequent judge presiding in the case lacks the authority to decertify the class.

IV. Whether, in a class action challenging defendants' practice of issuing parking or standing violations to taxi drivers and others by mail and without any personal service on the driver or placement of the citation on the offending vehicle, a judge's ruling that granted in part the defendants' motion for summary judgment on the application of the statute of limitations constitutes a decision on the merits under section 2-802 such that the judge lacks authority to decertify the class.

This court also directed the appellate court to accept the appeal and to answer the four certified questions. The circuit court subsequently certified those questions, and the appellate court allowed the appeal and answered the questions.

¶ 15       With respect to the first question, the appellate court determined that for a decision to be "on the merits" under section 2-802, there must be a "complete determination of liability on a claim, based on the facts disclosed by the evidence," but noted it is something less than a final judgment requiring a determination of remedies. 408 Ill. App. 3d at 819, 822-24. As to the second question, the court held that while the predominant legal issue had been decided, Judge Palmer made clear that there still remained "the determination of the highly contested issue of whether any of these citations, or at least which of these citations were issued in this manner." *Id.* at 825. Therefore, the grant of partial summary judgment in favor of plaintiff Mashal was not a decision on the merits and did not preclude decertification. As to the third question, the appellate court held that the circuit court did not enter a "decision on the merits" because the court made no finding of liability. *Id.* at 826. The appellate court explained that the ruling denying the City's summary judgment motion merely removed certain affirmative defenses, but still allowed the City to defend each claim on the merits. *Id.* As to the fourth question, the appellate court held that because the partial summary judgment ruling on the statute of limitations did not determine liability as to the remaining members of the class, there was no decision on the merits. *Id.* at 827.

¶ 16       Mashal filed a petition for leave to appeal (Ill. S. Ct. R. 315 (eff. Feb. 26, 2010)), which this court granted.

¶ 17                                             ANALYSIS

¶ 18       At the outset, we note that Mashal did not ask the circuit court to certify the issue of the propriety of the decertification order under Supreme Court Rule 308, nor did he ask this court to order certification of that issue when he requested a supervisory order from this court that led to our certification of the four questions noted above. Nor does Mashal now ask this court to address the propriety of the decertification order in this appeal. Instead, he asks us to enter a supervisory order directing the appellate court to consider the propriety of the

decertification order. For the reasons noted later in this opinion, we deny Mashal's request for a supervisory order that would order the appellate court to address that question at this stage.

¶ 19                    I. Definition of "Decision on the Merits"

¶ 20    We turn now to a resolution of the four certified questions. At the heart of the appeal before this court is the meaning of the phrase "decision on the merits" contained in section 2-802(a) of the Code. That section provides as follows:

> "(a) Determination of Class. As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it may be so maintained and describe those whom the court finds to be members of the class. *This order* may be conditional and *may be amended before a decision on the merits*." (Emphases added.) 735 ILCS 5/2-802(a) (West 2004).

As the appellate court correctly noted, the Code does not define the term "decision on the merits" (see 735 ILCS 5/1-101 *et seq.* (West 2004)), and no prior Illinois case has specifically defined the term in the context of section 2-802.

¶ 21    The construction of a statute is a question of law that this court reviews *de novo*. *In re C.C.*, 2011 IL 111795, ¶ 29. The primary goal of our review is to ascertain and give effect to the legislature's intent. *Id.* ¶ 30. In determining that intent, we may properly consider the language of the statute, the reason and necessity for the law, the evils sought to be remedied and the statute's ultimate aim. *In re Detention of Lieberman*, 201 Ill. 2d 300, 308 (2002). Moreover, when a term contained in a statute has not been defined by the legislature, we may employ a dictionary definition to ascertain its meaning. *People v. Comage*, 241 Ill. 2d 139, 144 (2011).

¶ 22    Black's Law Dictionary defines a "judgment on the merits" as "[a] judgment based on the evidence rather than on technical or procedural grounds.—Also termed *decision on the merits*." Black's Law Dictionary 920 (9th ed. 2009) (italics in original). This definition is largely consistent with the definition that the appellate court ultimately settled upon: "for a decision to be 'on the merits,' there must be a complete determination of liability on a claim based on the facts disclosed by the evidence." 408 Ill. App. 3d at 824.

¶ 23    The parties agree that the law on what constitutes a "judgment on the merits" for *res judicata* purposes is relevant to the determination of what constitutes a "decision on the merits" for purposes of section 2-802. In that regard, Mashal relies on a few appellate court cases that have held that a "judgment is 'on the merits' in the sense that it may be pleaded to bar a subsequent action where it amounts to a decision concerning the rights and liabilities of the parties based on ultimate facts or facts disclosed by pleadings, evidence, or both, and on which the right of recovery depends irrespective of formal, technical, or dilatory objections or contentions." *A.W. Wendell & Sons, Inc. v. Qazi*, 254 Ill. App. 3d 97, 108 (1993); see also *Fraley v. Boyd*, 83 Ill. App. 2d 98, 102 (1967); *Lytton v. Cole*, 54 Ill. App. 2d 161, 175 (1964). But we do not find this definition to be appreciably different from the one the appellate court ultimately adopted. Both definitions would seem to require (to the extent that it would make sense to extend the *res judicata* definition of "on the merits" to the

class action context of section 2-802) that the decision address the *liability* of the defendant based on the facts on which a right of recovery depends. At any rate, we do not find the *res judicata* definition to be determinative of the outcome here.

¶ 24    Because this court has not previously addressed this issue in the class action context and because our state class action statute is patterned after Rule 23 of the Federal Rules of Civil Procedure (Fed. R. Civ. P. 23), we look to federal law for guidance. See *Smith v. Illinois Central R.R. Co.*, 223 Ill. 2d 441, 447-48 (2006). Similar to our state class-certification statute, an earlier version of federal Rule 23 allowed amendment and decertification before "the decision on the merits." See Fed. R. Civ. P. 23, Committee Notes on Rule—2003 Amendments. The advisory committee notes to federal Rule 23 explain that the provision was amended in 2003 to reset the cutoff point at "final judgment" rather than "the decision on the merits." The committee notes further explain that the change was made to avoid "possible ambiguity" because "[f]ollowing a determination of liability *** proceedings to define the remedy may demonstrate the need to amend the class definition or subdivide the class." Fed. R. Civ. P. 23, Committee Notes on Rule—2003 Amendments.

¶ 25    Based on the reasons for the amendment to the federal rule, it seems clear to us that both a "decision on the merits" and a "final judgment" require at the very least a determination of liability; but, unlike a "decision on the merits," a "final judgment" also requires a determination of remedies. See 408 Ill. App. 3d at 823. In other words, the amendment made clear that a "decision on the merits" under the prior version was considered at the very least to be a "determination of liability," and the amendment clarified that certification could be amended even after a liability determination, when the remedy had not yet been determined. There is nothing in the language or legislative history of federal Rule 23 to suggest that before the 2003 amendment, a "decision on the merits" would include a judicial ruling that did not even decide whether a defendant would be liable to a single member of the putative class, or establish a definite right to recover on the part of the putative class representative.

¶ 26    The two federal cases cited by Mashal that have applied the pre-amendment version of federal Rule 23 illustrate the kind of decision that would be considered "on the merits." See *Vizcaino v. United States District Court for the Western District of Washington*, 173 F.3d 713 (9th Cir. 1999); *Scott v. City of Anniston*, 682 F.2d 1353 (11th Cir. 1982). But neither case is helpful to Mashal. In both *Vizcaino* and *Scott*, there was a complete determination of liability on the facts and the legal theory alleged that established a right of recovery in the representatives of the class. The only thing that remained was for a calculation of damages in *Scott* (*Scott*, 682 F.2d at 1358), and in *Vizcaino* to assess damages as well as some individual cases of eligibility that did not require the district court and the parties to become entangled in "resolving the issue on a worker-by-worker basis" (*Vizcaino*, 173 F.3d at 717, 721, 724).

¶ 27    We also note that before the 2003 amendments to federal Rule 23, a number of federal courts used the terms "decision on the merits" and "final judgment" interchangeably. See, *e.g.*, *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 792 n.14 (3d Cir. 1995) (under Rule 23, "the court retains the authority to re-define or decertify the class until the entry of final judgment on the merits"); *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 633 (9th Cir. 1982) (under Rule 23, class action status

is tentative before entry of final judgment); *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977) ("district court has the power at any time before final judgment to revoke or alter class certification" under Rule 23). We note that federal decisions interpreting the same language as is contained in our class action statute are persuasive authority. See *Smith*, 223 Ill. 2d at 447-48. Thus, we might well conclude from these decisions that even if a decision on the merits is not exactly a "final judgment" on the merits, it is at least something close to it.

¶ 28    Mashal claims that the appellate court's definition can only be met by entry of a final judgment that determines the liability of each and every class member. He claims that the appellate court's holding "flies in the face" of the ruling in *Rosolowski v. Clark Refining & Marketing*, 383 Ill. App. 3d 420, 426 (2008), where the court held that because the Illinois General Assembly has not chosen to amend section 2-802 to contain the same "final judgment" language as the federal statute, a "decision on the merits" is something different from a final judgment and therefore a decision does not have to be "final" to have a limiting effect on the power of the trial court under section 2-802.

¶ 29    There are a number of problems with Mashal's argument. First, Mashal's emphasis on *Rosolowski* ignores that the appellate court actually followed that decision. In *Rosolowski*, there was a determination of liability—and thus a decision on the merits that precluded decertification—because the jury had returned a verdict on liability in favor of plaintiffs and the trial court entered judgment on the jury verdict in a written order. Clearly, the rights and liabilities of the parties based on the evidence had been decided in that case. Moreover, the instant appellate court correctly concluded that its definition of "decision *** 'on the merits' *** [as] a complete determination of liability on a claim based on the facts disclosed by the evidence[,] *** comport[ed] with our reasoning in *Rosolowski*" that a decision on the merits is something different from final judgment. 408 Ill. App. 3d at 824. The appellate court correctly explained that in a final judgment setting, both liability and damages have been decided. But when there is merely a "decision on the merits," only liability has been decided. *Id.* at 823-24.

¶ 30    The second problem with Mashal's argument is that nothing in the appellate court's opinion can be construed to require a determination of liability with respect to every class member before there is a decision "on the merits." The appellate court acknowledged that decertification would not be allowed after a right to recover has been established. We interpret the appellate court to mean that if the circuit court proceedings had established the right of one class member to recover, that would be a decision on the merits that would bar decertification. In the present case, however, liability has not been established with respect to any of the claims.

¶ 31    Mashal also contends that the appellate court's definition is antithetical to the purpose and intent of the class action device because it undermines the ability to bring small claims together. Mashal argues that class actions are appropriate when "predicated on the inability of the court to entertain the actual appearance of all members of the class as well as the impracticality of having each member prosecute his individual claim" (internal quotation marks omitted) (*Gridley v. State Farm Mutual Automobile Insurance Co.*, 217 Ill. 2d 158, 166-67 (2005)), especially when damages are limited (*Fakhoury v. Pappas*, 395 Ill. App. 3d

-9-

302, 316 (2009)). Mashal claims that the amount of the ticket for a violation is so small—a "paltry" $30—that it would be cumbersome for each taxi driver to file his own lawsuit.[3]

¶ 32    We note that Mashal's arguments in this regard are not directed toward the propriety of Judge Palmer's decertification order *per se*. Rather, he suggests that his argument should inform what constitutes a "decision on the merits." But even accepting that class certification standards and the propriety of the decertification in this case are relevant to inform our consideration of what constitutes a "decision on the merits," we still would not find Mashal's arguments persuasive on the question of how broadly the term should be interpreted. The mere desire of Mashal to group small claims together into a large group is no reason to prematurely cut off a court's ability to decide the propriety of class certification under the usual standards established by the class certification statute and our case law.[4] Under those standards, even the smallest of claims cannot be grouped together if common issues do not predominate over individual ones. See 735 ILCS 5/2-801 (West 2004).

¶ 33    Section 2-801 of the Code provides that a class action may be maintained if the court finds that "[t]here are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members." 735 ILCS 5/2-801(2) (West 2004). To satisfy this predominance requirement, a plaintiff must necessarily show that successful adjudication of the class representative's individual claim "will establish a right of recovery in other class members." (Internal quotation marks omitted.) *Smith*, 223 Ill. 2d at 449 (quoting *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 128 (2005)). A favorable judgment for the class should decisively resolve the whole controversy, and all that should remain is for other class members to file proof of their claim. *Smith*, 223 Ill. 2d at 449. If a separate trial on liability is necessary for each claim, this would seem to be just the sort of situation warned about in *Smith*, where "an action conducted nominally as a class action *** degenerate[s] in practice into multiple lawsuits separately tried." See *id.* at 450.

---

[3]Mashal's assessment of the amount of claims at issue may be misleading, as the taxi drivers' claims in this case are not $30 claims. According to an affidavit submitted by one of Mashal's attorneys, out of a sampling of 78 drivers, not one claimed to have paid only $30 of alleged fly-by tickets. The average amount claimed per driver appears to be about $1,300, with one driver claiming to have been ticketed for a total of $11,410.

[4]*Barliant v. Follett Corp.*, 74 Ill. 2d 226, 230 (1978), recognized that it is the intent of the class action statute to have the court determine the suitability of the case for class action status at the earliest possible time. *Barliant* noted that to allow a judge to vacate a class determination by another judge, years later, is contrary to the intent of the statute and fosters uncertainty in litigation. *Id.* at 231. *Barliant* qualified this statement, however, by holding that "[i]t may be beneficial to the orderly administration of justice for a second judge to set aside an earlier determination of a suitable class action if clearly changed circumstances and not mere feelings of error, or more complete discovery warranted it." *Id.* at 231. Here, the lower courts specifically found that decertification was warranted due to clearly changed circumstances and facts revealed in discovery that were not available at the time of the original certification order. Thus, *Barliant* and the class action statute provide some protection from casual, frivolous or delayed decisions to decertify a class.

¶ 34    In the present case, the lower courts found that a trial for each class member would be required, allowing for examination and cross-examination of each class member as well as the traffic control aides and other witnesses called to explain the other side of the story. Mashal himself claims that there may be as many as 16,000 class members in this case. As the Seventh Circuit Court of Appeals has explained,

> "The picture of a *** judge presiding over thousands of evidentiary hearings each involving a trivial amount of money is not a pretty one. In these circumstances the judge was right to deny class certification, [citations] though not because class actions are poorly suited to aggregating small claims. Quite the contrary—if a class member has a large enough stake to be able to litigate on his own, the case for class-action treatment is weakened. [Citation.] 'The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.' [Citation.] But when a separate evidentiary hearing is required for each class member's claim, the aggregate expense may, if each claim is very small, swamp the benefits of class-action treatment." *Pastor v. State Farm Mutual Automobile Insurance Co.*, 487 F.3d 1042, 1047 (7th Cir. 2007).

¶ 35    Mashal argues generally that classes are not decertified after the litigation of common questions, but instead proceed to address issues particular to individual class members. He cites *Barliant v. Follett Corp.*, 74 Ill. 2d 226, 234 (1978), as noting that the "requirement of individual proofs should not be a bar to a class action." He also notes that "[a]fter the litigation of common questions, questions that are peculiar to individual class members may be determined in ancillary proceedings." *Hall v. Sprint Spectrum L.P.*, 376 Ill. App. 3d 822, 832 (2007); *Walczak v. Onyx Acceptance Corp.*, 365 Ill. App. 3d 664, 677 (2006). Finally, he suggests that "[w]here liability is premised on a common practice uniformly applied," it is appropriate for resolution as a class action. See *S37 Management, Inc. v. Advance Refrigeration Co.*, 2011 IL App (1st) 102496, ¶ 32.

¶ 36    We note that Mashal's arguments are better directed to the propriety of the decertification order in this case rather than to the actual questions before us of what constitutes a decision on the merits. Whether the circuit court had authority generally to decertify the class before a complete determination of liability on a claim based on the facts disclosed by the evidence and before a right of recovery is established in favor of a class member is what is at issue here. Nevertheless, we have no quarrel with the general principles that Mashal sets forth. But none of the cases he cites actually addressed a situation like the one before us where common questions no longer predominate before a decision on the merits is made. The cases cited do not hold that the circuit court would be categorically hamstrung from entering a decertification order in such a case. Additionally, Mashal's argument ignores that each of the cases he cites recognized the overriding principle that for the predominance requirement of section 2-801 to be met, the plaintiff must show that successful adjudication of his individual claim will establish a right of recovery in other class members. *Barliant*, 74 Ill. 2d at 234; *S37 Management*, 2011 IL App (1st) 102496, ¶ 17; *Hall*, 376 Ill. App. 3d at 831; *Walczak*, 365 Ill. App. 3d at 674. This he was not able to do.

¶ 37    The difference between the present case and the cases cited by Mashal, then, appears to

be that common issues predominated at the time the class certification or decertification determinations were made in those cases. But in the present case, there arguably were no common questions after Judge Siebel's declaration that fly-by ticketing is not permitted by law. Moreover, the cases Mashal relies upon involved a uniform practice, in which case, if the class representative prevailed on his individual claim, it would have established a right of recovery in other class members. The same is not so in the present case, where a trial on liability would need to be conducted for each class member to prevail.

¶ 38    For example, in *Barliant*, the class action suit involved breach of contract, fraud, and statutory fraud claims based on the defendant book publisher imposing a unilateral shipping charge on books purchased on credit after the time the defendant changed from a manual to a computerized billing system. The initial trial judge certified a class of all purchasers who paid the charge. But a subsequent judge who was assigned to the case vacated the earlier judge's order and dismissed the class action. The appellate court affirmed, finding the commonality/predominance requirement lacking because even if the plaintiff succeeded in proving his case at trial, " 'the issue remaining to be resolved to establish a right of recovery in any other class plaintiff is the defendant's liability.' " *Barliant*, 74 Ill. 2d at 234 (quoting *Barliant v. Follett Corp.*, 53 Ill. App. 3d 101, 107 (1977)). In arguing that the plaintiff's success in proving his case at trial would not establish the right to recover in any other class member, the defendant argued that examination of each individual transaction would be needed because both overcharges and undercharges were involved. The court ultimately rejected this argument for a number of reasons. It primarily rejected it because there was still a common question that predominated: "whether the addition of the charge, BKPST TRANS-INS, on the invoice violates the sales agreement which specified the books would be shipped F.O.B. defendant's warehouse ***." *Barliant*, 74 Ill. 2d at 235. This court also found that defendant's argument was "not without merit," but that it ignored two points: (1) *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 340-42 (1977), noted that the requirement of individual proof should not be a bar to class action; and (2) the record in *Barliant* showed conclusively that "the 'undercharges' were rather infrequent." *Barliant*, 74 Ill. 2d at 234.

¶ 39    *Barliant* is easily distinguishable from the present case. In *Barliant*, unlike the present case, there remained common issues that predominated at the time of the decertification order and were still in need of resolution. Also, establishing the right of recovery in the class representative would have established a right of recovery in many of the other class members without any or at least very little further inquiry. The same two points could be made about the situation in *Steinberg* and all of the other cases relied upon by plaintiffs.

¶ 40    We also conclude that the ancillary proceedings referred to in *Hall* and *Walczak* did not refer to thousands of trials on hotly contested issues of liability. Rather, they referred mostly to filing documentary proof of injury and assessing individual damages. Accordingly, they are not helpful to the resolution of the issue before us.

¶ 41    Instead, the present situation appears to be closer to *Smith*, where this court accepted the defendant's argument that personal injury actions should not be certified as class actions because such actions would trigger an unworkable array of fact-intensive, claimant-specific questions that would result in numerous minitrials that defy class treatment. *Smith*, 223 Ill.

2d at 445. *Smith* relied extensively on a similar case decided by the Texas Supreme Court, which found that class treatment was not superior to other available methods for the fair and efficient adjudication of the controversy:

> " 'The class action is a procedural device intended to advance judicial economy by trying claims together that lend themselves to collective treatment. It is not meant to alter the parties' burdens of proof, right to a jury trial, or the substantive prerequisites to recovery under a given tort. *** Although a goal of our system is to resolve lawsuits with 'great expedition and dispatch and at the least expense,' the supreme objective of the courts is 'to obtain a just, fair, equitable and impartial adjudication of the rights of litigants under established principles of substantive law.' [Citation.] This means that 'convenience and economy must yield to a paramount concern for a fair and impartial trial.' [Citation.] And basic to the right to a fair trial—indeed, basic to the very essence of the adversarial process—is that each party have the opportunity to adequately and vigorously present any material claims and defenses. If [the defendant] chooses to challenge the credibility of and its responsibility for each personal injury claim individually, then what may nominally be a class action initially would degenerate in practice into multiple lawsuits separately tried.' " *Smith*, 223 Ill. 2d at 451-52 (quoting *Southwestern Refining Co. v. Bernal*, 22 S.W.3d 425, 437-38 (Tex. 2000)).

¶ 42    Although Mashal correctly points out that *Smith* was a mass tort action and not a case involving thousands of traffic tickets that were allegedly illegally issued, we still find *Smith* more analogous to the present situation than the cases Mashal relies upon. Here, Judge Palmer correctly found that thousands of highly contested trials would likely be necessary to resolve liability in the case of each class member. We offer the following lengthy quote from Judge Palmer's memorandum decision to illustrate this point:

> "Taking the position that liability is not an issue and that only damages remained to be determined, Plaintiffs rely on the affidavits of 221 taxicab drivers whose credibility is seriously questioned by Defendants. These form affidavits state but do not conclusively establish that each ticket received by every class member was a 'fly-by.' *** Contrary to Plaintiffs' assertion, these statements are not unrefuted and Defendants are entitled to cross examine each taxicab driver and present testimony and documentary evidence ***. *** [T]he deposition testimony of Lt. McMahon contradicts the affidavits. Lt. McMahon testified that the officers were permitted to mail notice of the citation only after attempting to personally serve the taxicab driver or affix the citation to the vehicle.
>
> In *Avery v. State Farm Mutual Automobile Insurance. Co.*, 216 Ill. 2d 100, 109 (2005), the plaintiff policyholders filed suit against defendant ***[,] assert[ing] that State Farm's practice of using non-Original Equipment Manufacturer (non-OEM) parts to repair the plaintiffs' cars did not restore the cars to pre-loss condition as the parts were not of similar kind or quality. *Id.* at 110. The Illinois Supreme Court refused to uphold the breach of contract verdict with respect to any subclass as plaintiffs failed to establish damages. *Id.* at 146. Plaintiffs based their theory of recovery on the assumption that every time a repair estimate specified a non-OEM

part that a non-OEM part was actually used. *Id.* The Illinois Supreme Court determined that the loss did not actually occur until non-OEM parts were actually installed. *Id.* Of particular relevance to the case at bar, the [supreme court] found that any determination as to which plaintiffs were eligible for damages would require the examination of each individual class member's vehicle and repair. Such an undertaking, however, would mean that questions affecting individual class members would predominate over common questions, destroying the commonality required for class action. *Id.* at 148.

This situation is similar to *Avery*. The Plaintiffs provide a solution to determine the amount of restitution without each driver first establishing a right to recover. Individual issues predominate as for each ticket received[, as] each driver must prove that it was in fact a 'fly-by' ticket before determining the amount of recovery. As in *Avery*, an individualized examination is required. The Court is mindful of the concerns cited by \*\*\* *Barliant* that decertification years after litigation can be contrary to the objective of the class legislation and can foster uncertainty in litigation. However, the court noted circumstances where decertification may benefit the orderly administration of justice. *Barliant*, 74 Ill. 2d at 231. Judge Siebel's orders of [July 2002 and December 2005] did not address those instances where service was frustrated by the driver. \*\*\*

Since the order of July 25, 2002 certifying this class, Judge Siebel ruled on the common question of law issuing a declaratory judgment that 'fly-by' tickets do not comport with the law. In addition, since the order decertifying the class, Lt. McMahon testified in her deposition in April 2005 that the only time these citations are served by mail in the first instance is when service on the street is frustrated. The Defendants have represented that this class may number as many as 16,000 taxicab drivers. As a result, this Court is now confronted with a situation where as many as 16,000 trials must be held to determine liability. The Court finds that as a result of changed circumstances commonality no longer exists and the class action is no longer an appropriate method for the fair and efficient adjudication of this controversy."

¶ 43 We find that the points made by Judge Palmer are well-taken. They also serve to illustrate why this case is closer to *Smith* and *Avery*, and why the "ancillary proceedings" referred to by Mashal that may address individual questions in a class action suit do not appear to be the best choice here.

¶ 44 Based on all of the foregoing, we conclude that the appellate court's definition of a "decision on the merits" was correct. Accordingly, we answer the first certified question as follows: A "decision on the merits" is a complete determination of liability on a claim based on the facts disclosed by the evidence, and which establishes a right to recover in at least one class member, but which is something short of a final judgment.

¶ 45 We believe that this definition is consistent with the purposes and policies underlying sections 2-801 and 2-802 of the Code. Section 2-802 provides a procedure that allows the circuit court to decide certification early, but revisit the issue if necessary to ensure efficient

and effective case management of class litigation as new facts come to light and new circumstances arise. The rules governing the timing of class certifications are designed to conserve judicial resources, to prevent piecemeal litigation, and to provide for the smooth functioning of class actions. *Schlessinger v. Olsen*, 86 Ill. 2d 314, 317 (1981). The authority to amend a previous certification exists because it may be beneficial to the orderly administration of justice to set aside an earlier determination of a suitable class action if clearly changed circumstances or more complete discovery warrant it. *Barliant*, 74 Ill. 2d at 231. We believe that the flexibility to revisit certification—before liability is determined—best serves the objectives of the class certification provisions.

¶ 46                    II. Partial Summary Judgment Declaring Fly-by Practice Illegal

¶ 47       The second question certified for review asks whether Judge Siebel's July 2005 ruling declaring the issuance of fly-by traffic citations illegal was a "decision on the merits" that precluded later class decertification under section 2-802 of the Code. We answer this question in the negative.

¶ 48       Mashal argues that Judge Siebel's December 2005 partial summary judgment order was a decision on the merits because it ruled on the respective rights and liabilities of the parties—namely, that the City's fly-by practice was illegal—and that decision was based on the state of facts disclosed by Mashal's pleadings and the affidavits he submitted in support of his motion. Mashal further argues that this court should disregard the City's assertion that it did not admit it issued any flying tickets to Mashal or any other taxi driver. He claims that the City should be deemed to have admitted issuing flying tickets because it never filed a counteraffidavit to rebut his evidence.

¶ 49       After carefully reviewing Judge Siebel's orders, as well as the pleadings, affidavits and depositions on file, we find that Mashal's argument must be rejected. First, we note that Judge Siebel's ruling was one for *partial* summary judgment. Mashal's argument ignores a number of principles that would have pertained to Judge Siebel's ruling. Specifically, that summary judgment is proper only where the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2000). In determining whether a genuine issue of material fact exists, the pleadings, depositions, admissions and affidavits must be construed strictly against the movant and liberally in favor of the opponent. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). A genuine issue of material fact precluding summary judgment exists where the material facts are disputed or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts. *Adames v. Sheahan*, 233 Ill. 2d 276, 296 (2009). Summary judgment is a drastic means of disposing of litigation and, therefore, should be granted only when the right of the moving party is clear and free from doubt. *Adames*, 233 Ill. 2d at 296. Thus, the moving party has the burden of production on a summary judgment motion, and the moving party's affidavits may be contradicted by deposition testimony or other evidence. See, *e.g.*, *Carollo v. Al Warren Oil Co.*, 355 Ill. App. 3d 172, 183 (2004).

¶ 50　　　　Here, Judge Siebel did not rule that the City was liable, or that the City in fact had a practice of issuing fly-by citations. Instead, Judge Siebel found that fly-by violation notices violate provisions of the Illinois Vehicle Code and the City's ordinance. The judge did not specifically find that such conduct occurred and, if so, how often. We also note that Mashal did not urge the circuit court to decide whether any particular ticket was, in fact, a flying ticket, but argued instead that "the issue before the [circuit court] is only whether 'flying tickets' are illegal under the Chicago Municipal Code." The court followed that approach and issued its partial summary judgment with respect to the legal theory involved, but expressly left the remaining liability issue for trial because there remained genuine issues of material fact in that regard.

¶ 51　　　　We also do not find that the City made an admission as to liability. The City did no more than acknowledge service of some tickets by mail (which it says occurred infrequently) when a motorist became confrontational or fled by driving away when the traffic aide approached. The City notes that it "does not concede that serving initial violation notices by mail is illegal when hand-service or affixation to the vehicle is impossible at the time of the parking violation" because service at the scene is frustrated by the driver. The City's argument, however, is somewhat unclear as to whether it thinks that Judge Siebel ruled that initial service by mail is illegal even when frustrated by the driver.[5] We can find no indication from our review of Judge Siebel's order that he made such a ruling against the City. If he did, it would seem to contradict his July 2002 order certifying the class, in which he defined fly-by tickets in such a way as to exclude those cases when service was frustrated by the driver.[6] We also note that at the hearing on the City's motion to decertify the class, Judge Palmer delved

---

[5]We do note that the confusion is perhaps created by the fact that the City filed a motion for summary judgment and a memorandum in support thereof on July 1, 2005, in which it raised a number of arguments such as failure to exhaust administrative remedies, as well as the doctrines of *res judicata*, collateral attack and voluntary payment. The City also raised in that memorandum an extensive argument on the merits of the statutory scheme, a small portion of which was devoted to an argument that it would be absurd to interpret the statute so as to "tie the ticketing officer's hands by prohibiting delivery of citation notices" by mail where direct issuance of the ticket is made impossible. Judge Siebel's memorandum order of December 9, 2005, resolved both Mashal's motion for partial summary judgment and the City's motion for summary judgment in the same order. But Judge Siebel did not specifically refer to or decide the City's argument on the narrow point that it would create an absurdity to interpret the statute so as to prevent initial mail notice when service at the scene is prevented by the driver. The City asserts that it attempted to appeal the denial of its summary judgment motion under Illinois Supreme Court Rule 308, but leave to appeal was not allowed by the appellate court. The City maintains that the issues raised in its summary judgment motion could be appealed after final judgment if it does not ultimately prevail in the circuit court.

[6]We again note that in his July 25, 2002, certification order, Judge Siebel described the fly-by ticket as a situation where "a police officer or parking enforcement employee notes the number of the offending taxicab *without approaching or confronting the taxi cab driver*, and a violation notice is mailed to the taxicab licensee with a noted date, location, and time of the violation." (Emphasis added.)

into the issue of scofflaws deliberately evading service and noted that it would make no sense to interpret the statute so as to disallow initial mail notice in those cases. Judge Palmer also ultimately concluded that Judge Siebel's December 2005 partial summary judgment order did not address those situations where service was frustrated by the driver. Under these circumstances, we find no admission as to liability here.

¶ 52 Additionally, we reject Mashal's claims that the City did not sufficiently rebut Mashal's evidence so as to create a genuine issue of material fact. Mashal relies on the 221 affidavits of the taxi drivers who claim they were issued fly-by tickets. But these affidavits were sufficiently contradicted by the deposition testimony of Lieutenant McMahon, who testified that she was the supervisor of the City's traffic control aides and it was the City's practice to hand violation notices to drivers or affix them to the cars. She testified that initial mail notice only occurred infrequently and only in those rare cases where the driver becomes confrontational or flees when the traffic aide approaches. The City also maintained that it is entitled to cross-examine each driver at trial given its claim that in every case the notice was in fact delivered at the scene of the violation or such service was frustrated. We do not disagree with that contention.

¶ 53 We conclude that Judge Siebel entered the kind of partial summary judgment authorized by statute, which resolves one of the major issues, but directs further proceedings upon the remaining undetermined major issue or issues. See 735 ILCS 5/2-1005(d) (West 2004). Here, the remaining issue left to be determined was liability that would establish a right of recovery. The trial court did not decide whether the City violated the law by issuing a fly-by citation to Mashal or any other class member. If the trial court had entered an order on that question, its determination would have been a "decision on the merits" as defined in the first certified question in this case, precluding later decertification of the class. We believe that where Judge Siebel's order did not completely determine liability on any claim establishing an ultimate right of recovery based on the facts, the correct answer to the second certified question is "no."

¶ 54                    III. Whether Order Denying City's Affirmative Defenses Was
                                         a Decision on the Merits

¶ 55 The third question certified for review is whether Judge Siebel's order denying the City's affirmative defenses was a "decision on the merits" under section 2-802 such that the subsequent judge assigned to the case lacked the authority to decertify the class.

¶ 56 Mashal argues that the ruling denying summary judgment on the City's affirmative defenses was not just a "decision on the merits," but was also a "final judgment" because "it terminate[d] the litigation between the parties on the merits or dispose[d] of the rights of the parties, either on the entire controversy or a separate part thereof," and it set or fixed the rights of a party. See *In re A.H.*, 207 Ill. 2d 590, 594 (2003). Mashal relies upon Judge Siebel's declaration that "none of these affirmative defenses bars the claims raised by Mashal."

¶ 57 We do not believe that the denial of the City's affirmative defenses resolved a separate part of the essential controversy between the parties. Because the *denial* of summary

-17-

judgment leaves a case still pending and undecided, it cannot be a final order. See *Resurgence Financial, LLC v. Kelly*, 376 Ill. App. 3d 60, 62 (2007); *Central Illinois Light Co. v. Home Insurance Co.*, 342 Ill. App. 3d 940, 964 (2003).

¶ 58 We agree with the appellate court that while Judge Siebel's order may have removed the City's ability to bar Mashal's claim based on certain affirmative defenses, it did not affect the City's ability to defend each of the claims on the merits. The court did not enter a "decision on the merits" when it denied the City's motion for partial summary judgment on their affirmative defenses because the court made no finding of liability. If we were to adopt Mashal's interpretation, other defendants might refrain from bringing meritorious motions for summary judgment for fear that any decision by the court would bar decertification. This would be contrary to the class action goal of promoting efficiency in litigation. For all of these reasons, we answer the third question in the negative.

¶ 59 IV. Order Granting Partial Summary Judgment on Statute of Limitations

¶ 60 The final certified question is whether Judge Palmer's order, granting in part the City's motion on the application of the statute of limitations, constitutes a "decision on the merits" under section 2-802. Judge Palmer granted partial summary judgment to the City for all claims based on tickets issued more than five years from the filing of Mashal's complaint.

¶ 61 This court has previously rejected the notion that a grant of summary judgment based on a statute of limitations defense decides liability based "on the merits" of a claim. In *Downing v. Chicago Transit Authority*, 162 Ill. 2d 70, 77 (1994), the court held that "[w]hen a summary judgment is granted because the statute of limitations has run, the merits of the action are never examined." Thus, *Downing* concluded that a summary judgment ruling that certain claims are barred by the statute of limitations is not an "adjudication on the merits." *Id.*

¶ 62 We find *Downing* controlling. Accordingly, we hold that the fourth and final certified question must also be answered in the negative.

¶ 63 V. Mashal's Alternative Request for a Supervisory Order

¶ 64 Finally, Mashal requests alternative relief in the event that this court agrees with the appellate court's answers to the four certified questions. In that event, Mashal asks this court to exercise its supervisory authority and direct the appellate court to consider the propriety of Judge Palmer's decertification order.

¶ 65 We decline Mashal's request. First, the request comes far too late and would unduly prolong and fragment the litigation. The court decertified the class in July 2008. Mashal then devised certified questions and filed a motion for supervisory authority with this court to compel appellate review. Mashal could have pursued review of the merits of the decertification order at that time, if he believed that such review was warranted before final judgment. The appellate court could have considered the four certified questions and the related decertification issue in one proceeding. Instead, Mashal waited three years, until he lost in the appellate court on the four questions certified. We also think it odd that Mashal

makes no urging that, in the interests of judicial economy and the need to reach an equitable result, this court go beyond the questions of law presented by the certified questions and consider the propriety of the order that gave rise to the appeal. See *De Bouse v. Bayer AG*, 235 Ill. 2d 544, 550 (2009); *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 153 (2007).

¶ 66    At any rate, we believe that granting further appellate review at this point would only delay final resolution of the case. We also note that there are many other issues that could be potentially appealed in this case after final judgment. Moreover, we note that contrary to Mashal's contention, he could appeal the decertification order after final judgment in his individual case. See *Deposit Guaranty National Bank of Jackson v. Roper*, 445 U.S. 326, 336 (1980) (a class representative has standing to appeal an adverse class certification ruling even after he receives all he has sought, based on his interest in shifting costs of litigation to the class); see also *American Federation of State, County & Municipal Employees v. Department of Central Management Services*, 173 Ill. 2d 299, 326 (1996) (a party can appeal an otherwise nonappealable order at the time of the entry of a final order, as all prior rulings would be final and appealable at that point as well).

¶ 67                                      CONCLUSION

¶ 68    For the foregoing reason, we answer the first certified question, by holding that a "decision on the merits" is a complete determination of liability on a claim based on the facts disclosed by the evidence, and which establishes a right to recover in at least one class member, but which is something short of a final judgment. We answer the remaining three certified questions in the negative. We also decline Mashal's request for a supervisory order that would direct the appellate court to consider the propriety of the decertification order at this stage. Accordingly, we affirm the judgment of the appellate court and remand the cause to the circuit court of Cook County for further proceedings consistent with this opinion.

¶ 69    Appellate court judgment affirmed.

¶ 70    Cause remanded.

¶ 71    JUSTICE FREEMAN, specially concurring:

¶ 72    I concur in today's judgment and opinion. I write separately to address the issue of commonality. The court today observes that a commonality problem exists in this case, noting that, following Judge Siebel's declaration that fly-by ticketing was unlawful, there arguably were no common questions remaining, and "thousands of highly contested trials would likely be necessary to resolve liability in the case of each class member" (*supra* ¶ 42). The court then states that this commonality problem is similar to that in *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100 (2005), where a realistic determination of damages would have required individual examinations of class members' vehicles, destroying the commonality required for a class action. I dissented in *Avery*, challenging the need for such individual examinations. However, *Avery* is a different case. The circumstances making individual trials likely in the case at bar are not the same as those in

*Avery*. My dissent there presents no obstacle to my joining today's decision.