# Illinois Official Reports

## Supreme Court

---

### *Barr v. Cunningham*, 2017 IL 120751

---

| | |
|---|---|
| Caption in Supreme Court: | EVAN BARR, Appellee, v. LAUREL CUNNINGHAM *et al.*, Appellants. |
| Docket No. | 120751 |
| Filed | March 23, 2017 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Diane Shelley, Judge, presiding. |
| Judgment | Appellate court judgment reversed.<br>Circuit court judgment affirmed. |
| Counsel on Appeal | Schain, Banks, Kenny & Schwartz, Ltd., of Chicago (Michael E. Kujawa and Deborah A. Ostvig, of counsel), for appellants.<br><br>Mariam L. Hafezi and Daniel J. Kaiser, of Kaiser Law, of Bensenville, for appellee.<br><br>Edward F. Dutton, of Lisle, for *amici curiae* Park District Risk Management Agency *et al.* |

JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Freeman, Thomas, Kilbride, Garman, and Theis concurred in the judgment and opinion.

## OPINION

¶ 1 Plaintiff, Evan Barr, filed suit in the circuit court of Cook County against defendants, Township High School District 211 (District) and Laurel Cunningham, for injuries he sustained during a physical education class at James B. Conant High School (Conant). The lawsuit advanced to a jury trial. After all of the evidence was heard, the trial court entered a directed verdict for defendants. The court held that plaintiff failed to prove during his case-in-chief that defendants' conduct was willful and wanton, an exception to the supervisory immunity set forth in section 3-108 of the Local Governmental and Governmental Employees Tort Immunity Act (Act). 745 ILCS 10/3-108 (West 2010). The appellate court, with one justice dissenting, reversed and remanded for a new trial. 2016 IL App (1st) 150437. For the following reasons, we reverse the appellate court's judgment.

¶ 2           BACKGROUND

¶ 3 On June 3, 2010, plaintiff was playing floor hockey with 11 other students in his physical education class when a ball bounced off his stick and hit him in the eye, causing injury to his eye. In his second amended complaint, plaintiff alleged that Cunningham, the physical education instructor, was willful and wanton in failing to require the students to wear protective eyewear while playing floor hockey. In response, defendants asserted affirmative defenses alleging statutory immunity under sections 2-201 and 3-108 of the Act. 745 ILCS 10/2-201, 3-108 (West 2010). The parties filed cross-motions for summary judgment. The trial court denied both motions. The parties then proceeded to a jury trial, at which the following evidence was introduced.

¶ 4 In June 2010, plaintiff was 15 years old and a sophomore at Conant. On June 3, Cunningham allowed the students in the physical education class to choose one of several activities as part of a "heart rate monitor day." Plaintiff chose to play floor hockey with the same group of students with whom he had played floor hockey on 8 to 10 prior occasions. On each of these occasions, the students played floor hockey with plastic hockey sticks instead of wooden sticks and "squishy" safety balls instead of pucks. Cunningham was supervising the game, and all players were following the rules. Plaintiff was playing defense when an opposing player hit the ball toward him. The ball bounced off plaintiff's stick and hit him directly in the eye, causing injury and permanent dilation of his pupil.

¶ 5 Several witnesses testified that a box of safety goggles was stored in the same bucket as the safety balls in the equipment closet. However, there was no direct evidence that the goggles were purchased specifically for students playing floor hockey. Plaintiff testified that he probably would not have chosen to wear goggles had he known they were an available option.

¶ 6        Cunningham testified that she did not require students to wear safety goggles because she felt that the modified floor hockey equipment negated the need for protective eyewear. When asked why she did not instruct the students to wear goggles, Cunningham replied, "[m]ostly because I thought the equipment that we had was safe. I didn't think that an eye injury that was serious would even happen with the equipment that we had." Cunningham testified that she also imposed certain rules for the players' safety, including no high sticking, no checking, no jabbing, no slashing, no tripping, and no bending of the sticks. Students were instructed to keep the ball on the floor and to stop playing when Cunningham blew her whistle. Players would be penalized for breaking one of the rules.

¶ 7        Cunningham acknowledged that the ball would fly above players' waists at times during the games. However, she stated that she had not witnessed a student get hit in the face with a safety ball or stick prior to plaintiff's injury. According to Cunningham, no other student had suffered a serious injury from floor hockey prior to June 2010.

¶ 8        David Peña, the chairperson of the physical education department, testified that there was no rule mandating that students wear goggles while playing floor hockey. Peña further testified that there was no school district policy, law, or statute requiring the use of protective eyewear. Peña said he was not aware of any student other than plaintiff who had suffered an injury due to a lack of eyewear in a physical education class at Conant.

¶ 9        At the close of the evidence, defendants moved for a directed verdict. The trial court granted the motion and entered judgment for defendants. The court rejected defendants' claim of discretionary immunity under section 2-201 (745 ILCS 10/2-201 (West 2010)) of the Act but held that defendants were immune from liability as a matter of law pursuant to section 3-108 (745 ILCS 10/3-108 (West 2010)). The court based its holding on plaintiff's failure to present evidence of any willful and wanton conduct by defendants.

¶ 10        On appeal, a divided appellate court panel reversed the judgment of the trial court and remanded for a new trial on the merits. 2016 IL App (1st) 150437. The majority held that Cunningham's decision not to require students to wear the available safety goggles could be considered by a jury to be willful and wanton. The majority held, therefore, that the trial court erred in directing a verdict for defendants on the issue of supervisory immunity under section 3-108 of the Act (745 ILCS 10/3-108 (West 2010)). 2016 IL App (1st) 150437, ¶¶ 25, 31. The majority further held that the evidence did not support defendants' claim of discretionary immunity under section 2-201 of the Act (745 ILCS 10/2-201 (West 2010)). 2016 IL App (1st) 150437, ¶¶ 26-31. The dissenting justice argued that the trial court's judgment was correct because the evidence presented by plaintiff did not raise a substantial factual dispute as to whether defendants' conduct was willful and wanton. *Id.* ¶ 34 (Mason, P.J., dissenting).

¶ 11        This court granted defendants' petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Mar. 15, 2016). We allowed the Illinois Trial Lawyers Association, as well as the Park District Risk Management Agency and the Illinois Governmental Association of Pools, to file briefs as *amici curiae*. Ill. S. Ct. R. 345(a) (eff. Sept. 20, 2010).

¶ 12                                    ANALYSIS

¶ 13        Defendants challenge the appellate court's reversal of the directed verdict in their favor on the issue of whether defendants committed willful and wanton conduct. Willful and

wanton conduct is an express exception to the immunity afforded by section 3-108 of the Act concerning the supervision of an activity on public property:

> "(a) Except as otherwise provided in this Act, neither a local public entity nor a public employee who undertakes to supervise an activity on or the use of any public property is liable for an injury unless the local public entity or public employee is guilty of willful and wanton conduct in its supervision proximately causing such injury." 745 ILCS 10/3-108 (West 2010).

¶ 14 Section 1-210 of the Act defines willful and wanton conduct as follows:

> " 'Willful and wanton conduct' as used in this Act means a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property. This definition shall apply in any case where a 'willful and wanton' exception is incorporated into any immunity under this Act." 745 ILCS 10/1-210 (West 2010).

¶ 15 "Although the issue of willful and wanton conduct is usually a question of fact for the jury, a verdict may be directed on this issue if the evidence, viewed in its light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand." *Harris v. Thompson*, 2012 IL 112525, ¶ 42 (citing *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967)). We consider the totality of the evidence in determining whether a defendant's conduct was willful and wanton. *Id.* ¶ 45. If there is insufficient evidence to sustain an allegation of willful and wanton conduct, the issue should not go to the jury for its consideration. *Id.* ¶ 46. However, "[t]he circuit court may not enter a directed verdict 'if there is any evidence, together with reasonable inferences to be drawn therefrom, demonstrating a substantial factual dispute, or where the assessment of credibility of the witnesses or the determination regarding conflicting evidence is decisive to the outcome.' " *Id.* ¶ 45 (quoting *Maple v. Gustafson*, 151 Ill. 2d 445, 454 (1992)). This court's review is *de novo*. *Id.* ¶ 42.

¶ 16 Plaintiff contends that Cunningham demonstrated a conscious disregard for the safety of her students when she opted not to require safety goggles for floor hockey. Plaintiff makes two arguments in favor of affirming the appellate court's decision to allow a jury to decide the issue of willful and wanton conduct. First, he argues that the fact that goggles were available and stored with the floor hockey equipment presents a substantial question as to whether Cunningham was willful and wanton. We disagree.

¶ 17 According to the evidence introduced at trial, Cunningham required students to play floor hockey using plastic hockey sticks instead of wooden sticks and "squishy" safety balls instead of hard pucks. Based on her experience and expertise, Cunningham determined that the goggles were not necessary because she did not believe a serious eye injury could occur using this equipment. Cunningham also imposed and enforced various rules for the specific purpose of ensuring safety and preventing injuries. Thus, plaintiff did not meet his burden to show that Cunningham exhibited a conscious disregard for the students' safety. To the contrary, the evidence showed that Cunningham consciously considered student safety when she determined that the floor hockey equipment, together with the rules students were required to follow, was sufficient to prevent injuries.

¶ 18    This court has held that school employees who exercised some precautions to protect students from injury, even if those precautions were insufficient, were not guilty of willful and wanton conduct. See *Lynch v. Board of Education of Collinsville Community Unit District No. 10*, 82 Ill. 2d 415, 430-31 (1980) (prior to "powderpuff" football game, teachers conducted practice sessions, warned girls that football could be " 'rough,' " and advised them to wear mouth guards, but teachers did not provide any safety equipment). Accordingly, the evidence that Cunningham instituted several safeguards to prevent injuries shows that, at most, she took insufficient precautions. The fact that she did not take the additional step of requiring goggles does not establish a conscious disregard for her students' safety. Thus, Cunningham's decision not to require the students to use available safety equipment, standing alone, does not rise to the level of willful and wanton conduct.

¶ 19    Plaintiff next argues that Cunningham was aware that the ball could fly above players' waists and hit them in the eye. This fact, plaintiff argues, necessitated sending the issue of willful and wanton conduct to the jury. We reject this argument.

¶ 20    Illinois courts define willful and wanton conduct, in part, as the failure to take reasonable precautions after "knowledge of impending danger." *Id.* at 429; *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d 429, 449 (1992) (willful and wanton conduct differs from mere negligence in that it " 'requires a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man.' " (quoting Restatement (Second) of Torts § 500 cmt. g, at 590 (1965))); see also *Miller v. General Motors Corp.*, 207 Ill. App. 3d 148, 161 (1990). In this case, plaintiff failed to introduce any evidence at trial that Cunningham either knew or had reason to believe that a serious injury could occur as a result of students playing floor hockey. The students had played the same game with the same equipment on multiple occasions, and no student had been injured. Nevertheless, the appellate court majority below held that willful and wanton conduct could be found even though Cunningham had no "specific notice" of "a prior injury to a floor hockey player's eye with the use of a safety ball." 2016 IL App (1st) 150437, ¶ 23. While we agree with the appellate court that evidence of prior incidents need not involve the same specific injury as that suffered by plaintiff, here there was no evidence at all of prior injuries. Plaintiff did not present evidence of any other injuries suffered by anyone playing floor hockey under any circumstances.

¶ 21    To establish willful and wanton conduct in the absence of evidence of prior injuries, Illinois courts have required, at minimum, some evidence that the activity is generally associated with a risk of serious injuries. See *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 246 (2007); *Choice v. YMCA of McHenry County*, 2012 IL App (1st) 102877, ¶¶ 72-80; *Miller*, 207 Ill. App. 3d at 161; *Hadley v. Witt Unit School District 66*, 123 Ill. App. 3d 19, 23 (1984). For instance, in *Murray*, a student suffered a spinal cord injury while using a mini-trampoline during an extracurricular tumbling program. This court held that the defendants' failure to take adequate safety precautions in light of their knowledge of the inherent dangers of the activity raised genuine issues of material fact on the question of willful and wanton conduct. *Murray*, 224 Ill. 2d at 246. We explained:

> "The evidence demonstrates that it is well known that use of a mini-trampoline is associated with the risk of spinal cord injury from improperly executed somersaults

and that catastrophic injuries, including quadriplegia, can result from an improperly executed somersault. The evidence also indicates that the tumbling/trampoline program was not supervised by an instructor with professional preparation in teaching trampolining, nor was it taught in a proper manner with reminders of the risk of injury incorporated into the teaching process. The evidence also indicated that trained spotters and safety equipment were not provided at all times, and none of the United States Gymnastic Federation Safety Manual guidelines were followed. Hence, genuine and material triable issues of fact exist in this case on the question of whether defendants are guilty of willful and wanton conduct. Under the circumstances, it was error for the appellate court to affirm summary judgment." *Id.*

¶ 22 In another case, *Hadley v. Witt Unit School District 66*, 123 Ill. App. 3d 19 (1984), the plaintiff filed suit against a teacher and school district after being injured in a high school industrial arts class. On the day of the class, the students were supposed to be working on a woodworking assignment. Instead of working on the assigned project, plaintiff and three other boys attempted to pound a piece of scrap metal through a hole in an anvil. The teacher observed the boys' activity but did not tell them to stop or instruct them to put on safety goggles. After about 20 minutes, a metal chip flew into plaintiff's eye, causing trauma and visual impairment. *Id.* at 20. The appellate court held that the teacher's failure to act after observing the students engaging in a "dangerous activity" could constitute willful and wanton conduct. Accordingly, the issue should have gone to the jury instead of being disposed of by summary judgment. *Id.* at 23.

¶ 23 In contrast to *Murray* and *Hadley*, there was no evidence presented at trial that floor hockey played with plastic hockey sticks and squishy balls is an obviously dangerous activity. Plaintiff failed to introduce evidence of any particular dangers associated with floor hockey that called for the use of protective eyewear by students. Thus, plaintiff failed to meet his burden of proving that defendants knew or had reason to know that he could be seriously injured from playing floor hockey without safety goggles. Under these circumstances, plaintiff's claim that Cunningham was willful and wanton in neglecting to require safety goggles amounts to mere speculation, which is insufficient to establish a claim for willful and wanton conduct. See *Choice*, 2012 IL App (1st) 102877, ¶¶ 75, 79-80.

¶ 24 There was no evidence introduced at trial that defendants were aware of facts which would have put a reasonable person on notice of the risk of serious harm from the activity. See *Lynch*, 82 Ill. 2d at 429-30. This conclusion does not turn on a substantial factual dispute or an issue regarding the credibility of the witnesses or conflicting evidence. See *Harris v. Thompson*, 2012 IL 112525, ¶ 45. Viewing the evidence in the light most favorable to the plaintiff, we find that no jury could find for plaintiff on the issue of willful and wanton conduct. *Id.* ¶ 42. Therefore, the trial court did not err in directing a verdict for defendants on the issue of whether defendants were guilty of willful and wanton conduct in the exercise of their supervisory authority.[1]

¶ 25 Because we have held that the trial court properly directed a verdict in favor of defendants on the issue of supervisory immunity (745 ILCS 10/3-108 (West 2010)), we need

---

[1]We note that if Cunningham, the District's employee, is immune from liability, the District is also immune. See 745 ILCS 10/2-109 (West 2010) ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable.").

not address defendants' alternative argument that they were also entitled to a directed verdict on the basis of discretionary immunity (745 ILCS 10/2-201 (West 2010)).[2]

¶ 26                                                   CONCLUSION

¶ 27         For the foregoing reasons, we hold that the trial court did not err in allowing defendants' motion for a directed verdict. We thus reverse the judgment of the appellate court and affirm the judgment of the circuit court.

¶ 28         Appellate court judgment reversed.
¶ 29         Circuit court judgment affirmed.

---

[2]"Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201 (West 2010).