# Illinois Official Reports

## Appellate Court

---

### *Torres v. Peoria Park District*, 2020 IL App (3d) 190248

---

| | |
|---|---|
| Appellate Court Caption | MICHAEL T. TORRES and JAIMIE GIBSON, Plaintiffs-Appellants, v. THE PEORIA PARK DISTRICT, d/b/a Camp Wokanda, Defendant-Appellee. |
| District & No. | Third District<br>No. 3-19-0248 |
| Filed | February 26, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 17-L-346; the Hon. Michael P. McCuskey, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Scott B. Gibson and John R. Steigauf, of Gibson Steigauf, of Waukegan, for appellants.<br><br>Adam P. Chaddock, of Quinn, Johnston, Henderson, Pretorius & Cerulo, of Peoria, and Edward F. Dutton, of Lisle, for appellee. |
| Panel | JUSTICE CARTER delivered the judgment of the court, with opinion.<br>Justices O'Brien and Wright concurred in the judgment and opinion. |

¶ 1       Plaintiffs, Michael T. Torres and Jaimie Gibson, filed a second amended complaint against defendant, the Peoria Park District, alleging they sustained injuries that were proximately caused by defendant's willful and wanton conduct. Defendant filed a motion to dismiss the plaintiffs' second amended complaint, which the trial court granted with prejudice. Plaintiffs appealed. We reverse the trial court's order granting defendant's motion to dismiss and remand for further proceedings.

¶ 2                                                        FACTS

¶ 3       On August 26, 2017, plaintiffs, Michael Torres and Jaimie Gibson, allegedly sustained injuries at a campground owned by defendant, the Peoria Park District. On December 18, 2017, plaintiffs filed a complaint against the Peoria Park District for damages, which was dismissed without prejudice. Thereafter, plaintiffs filed an amended complaint, which was also dismissed without prejudice. On June 22, 2018, plaintiffs filed a second amended complaint against the park district for damages.

¶ 4       In count I (regarding the injuries of Michael Torres) and in count II (regarding the injuries of Jaimie Gibson) of the second amended complaint, plaintiffs alleged that the park district had engaged in willful and wanton conduct that proximately caused their injuries. Specifically, plaintiffs alleged the park district "owned, operated, maintained, and patrolled" Camp Wokanda; Camp Wokanda included a park, camping sites, wedding/banquet facility, and indoor accommodations for hire, as well as access to overnight camping sites on their property in exchange for a monetary fee; in February 2017, plaintiffs met with an agent or employee of the park district for a tour of Camp Wokanda for the purpose of deciding whether to reserve the camp for their future wedding and reception; at that meeting, the camp's employee described the rules, regulations, and policies of Camp Wokanda and led plaintiffs on a tour throughout the campground, during which time the employee explained that plaintiffs could rent one particular campsite for their exclusive use during their stay, pointed to two poles on each side of the path to the campsite, and explained that the poles were there for plaintiffs' exclusive use and could be used "for any camping or recreational purpose they so desired."

¶ 5       In counts I and II, plaintiffs additionally alleged that sometime before August 26, 2017, plaintiffs reserved one of the campsites for multiple nights, beginning on Friday, August 25, 2017, and paid the requested monetary fee; on August 25, 2017, plaintiffs arrived at Camp Wokanda, checked in with employees/agents of the park district, and were directed by the defendant to their designated individual campsite; on Saturday, August 26, 2017, plaintiffs attached their own camping hammock to two vertical parallel poles that were secured in the ground at the entryway of their designated campsite area and sat in the hammock together; one of the poles broke and fell onto both plaintiffs, causing the hammock and plaintiffs to drop to the ground; and no warnings were posted prohibiting the use of hammocks at the campsite.

¶ 6       Plaintiffs further alleged in counts I and II that in February 2017 and on August 26, 2017, the park district had a policy of not allowing hammocks or any other object to be hung from the poles and had actual knowledge that the said poles were never intended to, and did not have the structural ability to, support appreciable weight (including people in hammocks); at no time did the plaintiffs agree to or sign any type of release of liability; at no time did defendant communicate with plaintiffs about any rules, policies, or warnings regarding their stay and use

of Camp Wokanda; and, on August 26, 2017, after the pole broke and injured plaintiffs, a Peoria police officer told one of the plaintiffs' family members that the park district had a policy that did not allow erecting hammocks or any other object from any structure within the park district property. Plaintiffs attached the police report to the second amended complaint, indicating that, upon his arrival to the scene, the responding officer saw a "telephone pole" standing on the right of the entrance to the camp area with a hammock tied to it and a "telephone pole" on the ground to the left of the entrance. The responding officer also indicated in the report that he followed the ambulance to the hospital to gather information and, while Torres and Gibson were being treated, he advised Torres's mother that "it is Peoria Park District Policy that we do not allow erecting hammocks, or any other object, from any structure within Park District properties."

¶ 7    Plaintiffs also alleged in counts I and II that on and before 1975, Camp Wokanda was owned and used by the United States Boy Scouts, who erected numerous manmade wooden poles adjacent to a number of campsite openings and trails to be used to hang banners, flags, finish line signs, and string lights; those poles remained vertically in the ground and remained in their original location for many years; the poles "were not intended by the Boy Scouts to support any appreciable weight including the hanging of hammocks with people in them"; the Boy Scouts had actual knowledge, including the formation of a safety policy, that the poles were not safe to support any appreciable weight, including people in hammocks; in 1975, the park district purchased Camp Wokanda and continuously owned, operated, maintained, and administered Camp Wokanda to the present time; for 42 years (1975 through August 26, 2017), the park district kept said poles in their pre-1975 locations and had actual knowledge and a policy that the poles, including the pole that broke and injured plaintiffs, were unsafe and unable to support appreciable weight, including people sitting in a hammock; at no time did the park district notify plaintiffs of its policy that did not allow the hanging of hammocks from the poles or that its policy prohibiting hanging hammocks from the poles was due to the poles never having been intended to hold appreciable weight or due to the poles being old and rotted; the park district did not have an inspection system and did not inspect the poles to ascertain the condition of the poles; the park district did not post any warning signs regarding the use of the poles; before August 26, 2017, certain poles located on Camp Wokanda broke or fell and had to be removed; for many years before and on August 26, 2017, the park district had actual knowledge that said poles, including the pole that injured the plaintiffs, were structurally not intended to support any appreciable weight, including people in hammocks, as evidenced by its safety policy and were unsafe for use by fee-paying campers including plaintiffs; and on August 27, 2017, a camp employee told Torres's family the plaintiffs' incident "wasn't the first time the camp's structures had fallen—just the week before, an old rotted tree that hadn't been properly removed fell on a tent at one of the campsites."

¶ 8    Plaintiffs alleged in counts I and II that, by its acts and omissions regarding the poles, the park district was utterly indifferent to the safety of people on its property (including plaintiffs) and consciously disregarded the safety of other people (including plaintiffs). Plaintiffs alleged that they were injured due to the willful and wanton conduct of the park district in one or more of the following respects, where the park district:

        "a. Failed to provide a safe campsite for use of the plaintiffs;

- 3 -

b. Showed an utter indifference for the safety of people on their property including the Plaintiff by having actual knowledge that said poles were unsafe for use by its patrons in hammocks;

c. Showed a conscious disregard for the safety of people on their property including the Plaintiff by having actual knowledge that said poles were unsafe for use by its patrons in hammocks;

d. Allowed an unsafe condition to exist at the campsite being the faulty and unsafe pole when it had actual knowledge that said pole was faulty and unsafe;

e. Verbally told the Plaintiffs to use said poles without any restrictions when the Defendant knew or should have known that said poles were unsafe for hammock use;

f. Required the Plaintiffs to use a particular designated campsite when it knew or should have known that it was unsafe;

g. Failed to comply with its own policies and procedures;

h. Failed to comply with its own policy to notify campers, including the Plaintiffs not to hang a hammock on said poles due to the poles being unsafe;

i. Failed to comply with its own policy to notify campers, including the Plaintiffs not to hang a hammock on said poles due to the poles being old and rotten;

j. Failed to comply with its own policy to notify campers, including the Plaintiffs not to hang a hammock on said poles due to the poles never being intended to safely hold appreciable weight[;]

k. Failed to post any warning signs or any other communication to inform the Plaintiffs or other patrons of the CAMP WOKONDA policy prohibiting its campsite patrons from hanging hammocks on said poles;

l. Failed to warn of the unsafe condition of the property;

m. Failed to warn of the unsafe condition of the poles;

n. Failed to provide safe poles for use of the Plaintiffs at the campsite;

o. Failed to inspect said poles;

p. Provided unsafe poles for use of its patrons including the Plaintiffs at the campsite; and

q. Failed to remove faulty and unsafe poles from the property."

¶ 9 Plaintiffs alleged that, as a direct and proximate result of one or more of the aforesaid acts of willful and wanton conduct of the park district, plaintiffs sustained injuries and losses. For plaintiff Michael Torres, as alleged in count I, his injuries included broken bones, severe spine injuries, the need for future surgery, and scarring. For plaintiff Jaimie Gibson, as alleged in count II, her injuries included broken bones and a punctured lung. Each plaintiff requested a judgment against the park district in an amount in excess of $50,000.

¶ 10 In addition, realleging the factual allegations contained in counts I and II, plaintiffs alleged in count III (related to Michael Torres) and count IV (related to Jaimie Gibson) that the park district violated the Premises Liability Act (740 ILCS 130/1 *et seq.* (West 2016)) by (a) failing to provide a safe campsite for use of the plaintiffs, (b) showing an utter indifference for plaintiffs by having actual knowledge that said poles were unsafe for use by its patrons in hammocks, (c) showing a conscious disregard for the safety of plaintiffs by having actual knowledge that said poles were unsafe for use by its patrons in hammocks, (d) allowing an

unsafe condition to exist at the campsite being the faulty and unsafe poles when it had actual knowledge that said poles were faulty and unsafe, (e) verbally telling plaintiffs to use said poles without any restrictions when the park district knew or should have known the said poles were unsafe for hammock use, (f) requiring plaintiffs to use a particular designated campsite when it knew or should have known that it was unsafe, (g) failing to comply with its own policies and procedures, (h) failing to comply with its own policy to notify campers (including plaintiffs) not to hang a hammock on said poles due to the poles being unsafe, (i) failing to comply with its own policy to notify campers (including plaintiffs) not to hang a hammock on said poles due to the poles being old and rotten, (j) failing to comply with its own policy to notify campers (including plaintiffs) not to hang a hammock on said poles due to the poles never being intended to safely hold appreciable weight, (k) failing to post any warning signs or any other communication to inform the plaintiffs of its policy prohibiting its campsite patrons from hanging hammocks on said poles, (*l*) failing to warn of the unsafe condition of the property, (m) failing to warn of the unsafe condition of the poles, (n) failing to provide safe poles for use of the plaintiffs at the campsite, (o) failing to inspect said poles, (p) providing unsafe poles for use of its patrons including the plaintiffs at the campsite, and (q) failing to remove faulty and unsafe poles from the property.

¶ 11    In response to plaintiffs' second amended complaint, the park district filed a combined motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2016)), which allows a party to move to dismiss a pleading under both section 2-615 of the Code (*id.* § 2-615 (providing for a dismissal of a pleading which is "substantially insufficient in law")) and section 2-619 of the Code (*id.* § 2-619 (providing for an involuntary dismissal based upon certain defects or defenses)). In the section 2-615 portion of its motion, the park district contended that it was immune from negligence liability pursuant section 3-106 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/3-106 (West 2016)) for claims based upon a condition of public property intended for recreational use unless the park district was guilty of willful and wanton conduct, and the park district argued the plaintiffs failed to sufficiently allege the park district engaged in willful and wanton conduct. In further support of its section 2-615 motion, the park district argued immunity from liability pursuant to section 3-102(a) of the Tort Immunity Act (*id.* § 3-102(a)), which places a general duty upon local public entities to maintain its property in a reasonably safe condition, and the park district argued plaintiffs' allegations indicated that plaintiffs' use of the poles was not a use and plaintiffs failed to allege the park district had notice of an unsafe condition regarding the poles. In the section 2-619 portion of its motion to dismiss, the park district argued that plaintiffs' claim was barred because the park district was immune from negligence liability pursuant to section 3-106 of the Tort Immunity Act, where plaintiffs' allegations did not indicate the park district engaged in willful and wanton conduct as required by section 3-106.

¶ 12    On April 11, 2019, a hearing on the park district's motion to dismiss took place. The trial court found that plaintiffs' second amended complaint failed to properly plead facts necessary "to survive the Tort Immunity Act" and granted the park district's combined motion to dismiss.

¶ 13    Plaintiffs appealed.

ANALYSIS

Plaintiffs appeal, arguing that the trial court erred in dismissing their complaint. In response, the Park district argues that the trial court correctly dismissed plaintiffs' second amendment complaint as required by section 3-106 of the Tort Immunity Act (*id.* § 3-106).

A section 2-615 motion to dismiss attacks the legal sufficiency of a complaint, while a section 2-619 motion to dismiss admits the sufficiency of the complaint but asserts an affirmative defense or other matter that avoids or defeats the claim. *Carr v. Koch*, 2012 IL 113414, ¶ 27. Immunity under the Tort Immunity Act is an affirmative matter properly raised in a section 2-619(a)(9) motion to dismiss. *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003).

As an initial matter, we note that the trial court granted the park district's section 2-619.1 motion to dismiss with prejudice but did not specifically indicate whether the complaint was dismissed pursuant to the section 2-615 portion or the section 2-619 portion of the motion. Accordingly, we will consider not only whether plaintiffs' allegations are barred by an affirmative matter avoiding the legal effect of or defeating plaintiffs' claims under section 2-619(a)(9) of the Code, but we will also consider the legal sufficiency of plaintiffs' claims under section 2-615 of the Code.

Whether the trial court dismissed the complaint pursuant to either section 2-615 or 2-619 of the Code, we accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts, while construing the allegations in the complaint in the light most favorable to the plaintiff. *Floyd v. Rockford Park District*, 355 Ill. App. 3d 695, 699-700 (2005). A motion to dismiss should not be granted unless it is clearly apparent that no set of facts could be proven that would entitle the plaintiff to recovery. *Snyder v. Heidelberger*, 2011 IL 111052, ¶ 8 (a section 2-619 motion "should be granted only if the plaintiff can prove no set of facts that would support a cause of action"); *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006) ("a cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery").

In their briefs on appeal, the parties both address the issue of whether plaintiffs were intended users of the campsite and poles and the issue of whether the park district had actual notice that the poles were unsafe. Those arguments are irrelevant to this case insofar as those arguments are made in reference to section 3-102 of the Tort Immunity Act, which codified the common-law duty of a local public entity to maintain its properly in a reasonably safe condition. See 745 ILCS 10/3-102(a) (West 2016); *Monson v. City of Danville*, 2018 IL 122486, ¶ 24.

Section 3-102(a) of the Tort Immunity Act provides:

> "*Except as otherwise provided in this Article*, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in reasonably adequate time prior to an injury to have taken measures to remedy or protect against such condition." (Emphasis added.) 745 ILCS 10/3-102(a) (West 2016).

¶ 21    Under the same article—article III, "Immunity from Liability for Injury Occurring in the Use of Public Property"—section 3-106 of the Tort Immunity Act provides:

"Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." *Id.* § 3-106.

¶ 22    Here, there is no dispute that the property in question was recreational property so that section 3-106 of the Tort Immunity Act applies. See *id.*; *Murphy v. Springfield Park District*, 2019 IL App (4th) 180662, ¶ 49 (section 3-106, and not section 3-102, governs whether a local public entity is liable for an injury where there is no dispute concerning the recreational nature of the property). Under section 3-106, the park district is liable for plaintiffs' injuries only if the park district is guilty of willful and wanton conduct that proximately caused the plaintiffs' injuries. See 745 ILCS 10/3-106 (West 2016); *Murphy*, 2019 IL App (4th) 180662, ¶ 49; *Leja v. Community Unit School District 300*, 2012 IL App (2d) 120156, ¶ 10; *Dunbar v. Latting*, 205 Ill. App. 3d 786, 792 (1993). Because the parties agree that the plaintiffs' injuries occurred on recreational property, section 3-106 controls, and the issue of notice is relevant only insofar as it relates to whether the park district engaged in willful and wanton conduct. See *Murphy*, 2019 IL App (4th) 180662, ¶ 50. Therefore, we need only address the issue of whether plaintiffs properly alleged that the park district's willful and wanton conduct proximately caused their injuries.

¶ 23    Although the issue of whether a defendant's actions amounted to willful and wanton conduct is usually a question of fact for the jury, a court may decide as a matter of law whether the plaintiff's allegations of willful and wanton conduct are sufficient to state a cause of action. *Leja*, 2012 IL App (2d) 120156, ¶ 11. "Whether conduct is willful and wanton depends on the circumstances of each case." *Harris v. Thompson*, 2012 IL 112525, ¶ 41; see also *Barr v. Cunningham*, 2017 IL 120751, ¶ 15 ("[w]e consider the totality of the evidence in determining whether a defendant's conduct was willful and wanton").

¶ 24    Section 1-210 of the Tort Immunity Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210 (West 2016). "[A] course of action which *** shows an utter indifference to or conscious disregard for the safety of others or their property" " contemplates more than mere inadvertence, incompetence, or unskillfulness." (Internal quotation marks omitted.) *Leja*, 2012 IL App (2d) 120156, ¶ 11. "Illinois courts define willful and wanton conduct, in part, as the failure to take reasonable precautions after 'knowledge of impending danger.' " *Barr*, 2017 IL 120751, ¶ 20 (quoting *Lynch v. Board of Education of Collinsville Community Unit District No. 10*, 82 Ill. 2d 415, 429 (1980)). Willful and wanton conduct differs from mere negligence in that it " 'requires a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man.' " *Burke v. 12 Rothschild's*

*Liquor Mart, Inc.*, 148 Ill. 2d 429, 449 (1992) (quoting Restatement (Second) of Torts § 500 cmt. g, at 590 (1965)).[1]

¶ 25 "[C]ourts employing the [Tort Immunity] Act's definition have found willful and wanton conduct to exist where a public entity knew of a dangerous condition yet took no action to correct the condition [(see, *e.g.*, *Muellman v. Chicago Park District*, 233 Ill. App. 3d 1066, 1069 (1992))], where a public entity was aware of prior injuries caused by a dangerous condition but took no action to correct it [(see, *e.g.*, *Carter v. New Trier East High School*, 272 Ill. App. 3d 551, 557-58 (1995))], and where a public entity intentionally removed a safety feature from recreational property despite the known danger of doing so [(see, *e.g.*, *Benhart v. Rockford Park District*, 218 Ill. App. 3d 554, 559-60 (1991))]." *Leja*, 2012 IL App (2d) 120156, ¶ 11. In *Benhart*, for example, the Appellate Court, Second District, held that a patron of a water park sufficiently stated a cause of action for willful and wanton conduct by the park district by alleging the owner of the water park intentionally removed nonslip strips from a wave pool despite knowing the wave pool was slippery without the strips. *Benhart*, 218 Ill. App. 3d at 559-60.

¶ 26 In this case, the allegations in plaintiffs' second amended complaint indicated that, in 1975, the park district purchased the campground from the Boy Scouts with the wooden poles in place on the property at that time, so that the park district knew that the poles were at least 42 years old at the time of the incident. In erecting the poles, the Boy Scouts knew the poles were not safe to support any appreciable weight and had implemented a policy indicating the poles were not safe to support any appreciable weight. At some point after purchasing the campground from the Boy Scouts, the park district implemented a similar policy prohibiting erecting hammocks, or any other objects, from any structure on park district property, and it can be inferred that policy included a prohibition on hanging a hammock from the poles at issue in this case. It can also be reasonably be inferred from the allegations that the park district established this policy, at least in part, for the safety of its patrons because the park district knew that the poles at issue were at least 42 years old and had not been originally erected to bear any appreciable weight, even though the poles appeared sturdy enough to do so.

---

[1]"The Restatement avoids the use of the term 'willful and wanton,' characterizing all such conduct as 'reckless.' " *Burke*, 148 Ill. 2d at 449 (citing Restatement (Second) of Torts § 500, Special Note (1965) (providing, "[t]he conduct described in this Section is often called 'wanton or willful misconduct' "). Comment g of section 500 of the Restatement (Second) of Torts provides:

"Reckless misconduct differs from negligence in several important particulars. It differs from that form of negligence which consists in mere inadvertence, incompetence, unskillfulness, or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency, in that reckless misconduct requires a conscious choice of a course of action, either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man. It differs not only from the above-mentioned form of negligence, but also from that negligence which consists in intentionally doing an act with knowledge that it contains a risk of harm to others, in that the actor to be reckless must recognize that his conduct involves a risk substantially greater in amount than that which is necessary to make his conduct negligent. The difference between reckless misconduct and conduct involving only such a quantum of risk as is necessary to make it negligent is a difference in the degree of the risk, but this difference of degree is so marked as to amount substantially to a difference in kind." Restatement (Second) of Torts § 500 cmt. g, at 590 (1965).

- 8 -

¶ 27    The fact that the poles appeared sturdy is indicated by, or could be reasonably inferred from, the photographs of the poles, which included a photograph of the fallen pole with eyehooks and nails attached to it (suggesting various items were previously safely secured to the pole without the pole falling), and from the facts alleged that plaintiffs had secured their hammock to the poles and attempted to sit in the hammock together. Despite the park district having a safety policy in place prohibiting such use of the poles, the park district (through its agent or employee) allegedly specifically told plaintiffs the poles "were there for any camping or recreational purpose they so desired" without any qualification or indication that doing so would be against the park district's policy. Similar to *Benhart*, the allegations in plaintiffs' second amended complaint indicated that the park district had a safety feature in place (a policy of prohibiting certain uses of the poles) but removed that safety feature by telling plaintiffs the poles could be used for any purpose without informing them that doing so would be against its policy. See *id.*

¶ 28    Given these allegations, we cannot say that it is clearly apparent that there is no set of facts that could be proven that would entitle the plaintiffs to recover. Accepting the allegations in the second amended complaint as true and drawing reasonable inferences from those allegations, while construing the allegations in the light most favorable to the plaintiffs, we conclude that plaintiffs sufficiently alleged that the park district engaged in willful and wanton conduct by alleging a course of action by the park district that showed an utter indifference to or conscious disregard for the safety of plaintiffs that proximately caused plaintiffs' injuries. See 745 ILCS 10/1-210 (West 2016). Therefore, the trial court erred in granting defendant's section 2-615 motion to dismiss. See 735 ILCS 5/2-615 (West 2016).

¶ 29    Additionally, based on the facts alleged, we cannot say that the park district is immune from liability as a matter of law pursuant to section 3-106 of the Tort Immunity Act. See *id.* § 2-619(a)(9) (allowing an involuntary dismissal of a plaintiff's claim where the claim is "barred by other affirmative matter avoiding the legal effect of or defeating the claim"). The "affirmative matter" asserted in a section 2-619(a)(9) motion to dismiss must be apparent on the face of the complaint or be supported by affidavits or certain other evidentiary materials. *Van Meter*, 207 Ill. 2d at 377. Once a defendant satisfies the initial burden of going forward on the section 2-619(a)(9) motion to dismiss, the burden shifts to the plaintiff to establish that the alleged defense is either unfounded or requires the resolution of an essential element of material fact before it is proven. *Id.* If, after considering the pleadings and affidavits, the trial judge finds that the plaintiff has failed to carry its shifted burden of going forward, the motion may be granted. *Id.* On appeal from a section 2-619(a)(9) dismissal, the reviewing court must consider whether a genuine issue of material fact existed to preclude the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law. *Id.* at 377-78.

¶ 30    In this case, the legal sufficiency of plaintiffs' allegations was admitted by the park district in regard to its section 2-619(a)(9) motion to dismiss. See *Carr*, 2012 IL 113414, ¶ 27 (a section 2-619 motion to dismiss admits the sufficiency of the complaint but asserts an affirmative defense or other matter that avoids or defeats the claim). The park district raised, as an affirmative matter, its statutory immunity from liability under section 3-106 of the Tort Immunity Act, arguing that the conduct alleged in plaintiff's complaints involved acts or omissions that did not equate to willful and wanton conduct. However, the affirmative matter asserted by the park district (immunity pursuant to section 3-106 because the park district did not engage in willful and wanton conduct) is not apparent on the face the complaint where a

genuine issue of material fact remains as to whether the park district did in fact engage in the willful and wanton conduct alleged by plaintiffs. See *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 245-46 (2007) (holding as a matter of law that the complaint alleged sufficient facts of the defendants' willful and wanton conduct to create a jury question).

¶ 31 As noted above, the plaintiffs sufficiently alleged a set of facts from which, if proven, a jury could find the park district engaged in willful and wanton conduct that proximately caused plaintiffs' injuries. See *Monson*, 2018 IL 122486, ¶ 15 (since the Tort Immunity Act is in derogation of the common law, we must construe the Act strictly against the public entity seeking immunity). Consequently, the park district did not meet its burden of establishing its affirmative defense under section 3-106 of the Tort Immunity Act. See *Van Meter*, 207 Ill. 2d at 377.

¶ 32 For the above reasons, we conclude the trial court erred in granting the park district's combined motion to dismiss with prejudice.

¶ 33 CONCLUSION

¶ 34 The judgment of the circuit court of Peoria County is reversed, and this cause is remanded for further proceedings.

¶ 35 Reversed and remanded.