NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 231418-U

NO. 4-23-1418

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 8, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| MICHAEL T. TORRES and JAIMIE GIBSON, | ) | Appeal from the |
| Plaintiffs-Appellants, | ) | Circuit Court of |
| v. | ) | Peoria County |
| PEORIA PARK DISTRICT, Individually and d/b/a | ) | No. 17L346 |
| CAMP WOKANDA, | ) | |
| Defendant-Appellee. | ) | Honorable |
| | ) | Stewart J. Umholtz, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Doherty and Vancil concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, concluding summary judgment for defendant was appropriate because the material submitted was insufficient to establish a triable question as to whether defendant's conduct was willful and wanton.

¶ 2    Plaintiffs, Michael T. Torres and Jaimie Gibson, filed a civil action for damages against defendant, the Peoria Park District, d/b/a Camp Wokanda, alleging its willful and wanton conduct resulted in them sustaining personal injuries. Defendant filed a motion for summary judgment. Following a hearing, the circuit court granted defendant's motion, finding plaintiffs, based upon the materials submitted, could not prove defendant's conduct was willful and wanton. Plaintiffs appeal, arguing summary judgment should not have been granted for defendant because the material submitted was sufficient to establish a triable question as to whether defendant's conduct was willful and wanton. For the reasons that follow, we disagree and affirm.

¶ 3                              I. BACKGROUND

¶ 4                           A. Commencement of a Civil Action for Damages

¶ 5              In 2017, plaintiffs commenced their civil action for damages against defendant. The action stemmed from an incident occurring earlier that year at a campground owned and operated by defendant. In their complaint, as later amended, plaintiffs alleged they sustained personal injuries when a large wooden pole to which they had attached a hammock broke and crashed down onto them while they were in the hammock together. Plaintiffs further alleged their injuries were proximately caused by defendant's willful and wanton conduct. Specifically, plaintiffs alleged, in pertinent part, defendant engaged in willful and wanton conduct by (1) failing to convey or inform them of its safety policy prohibiting the attachment of hammocks to campsite poles, (2) giving them permission to attach a hammock to the campsite poles despite its safety policy, and (3) failing to inspect the campsite poles.

¶ 6                           B. Plaintiffs' Action Survived Dismissal

¶ 7              In 2020, the Third District reversed the circuit court's judgment dismissing plaintiffs' complaint and remanded for further proceedings, concluding plaintiffs had sufficiently alleged a set of facts from which a trier of fact could find defendant engaged in willful and wanton conduct that proximately caused their injuries and defendant did not meet its burden of establishing its affirmative defense. *Torres v. Peoria Park District*, 2020 IL App (3d) 190248, ¶¶ 26-34, 166 N.E.3d 802.

¶ 8                           C. Pursuit of Discovery

¶ 9              Between 2020 and 2022, the parties engaged in discovery. With respect to the pertinent allegations of willful and wanton conduct by defendant, the following was revealed during discovery.

¶ 10             At the time plaintiffs had sustained their injuries, an ordinance was in effect

prohibiting unauthorized persons from constructing or erecting any "structure of whatever kind, whether permanent or temporary in character," upon defendant's property unless a special written permit had issued. This ordinance, as asserted by plaintiffs and not contested by defendant, prohibited the attachment of hammocks to campsite poles at defendant's campground. Defendant did not post signs or provide any type of paperwork to those who visited its campground about the prohibition against attaching hammocks to its property.

¶ 11        Plaintiff Gibson indicated she and plaintiff Torres spoke with a campground manager, Jacob Mol, shortly before they were injured. Plaintiff Gibson admitted they did not speak to Mol about hanging a hammock. Plaintiff Torres did not recall any conversation with Mol. Mol asserted he had no knowledge of plaintiffs hanging their hammock before they were injured. A former park district police officer, Vince Cogdal, testified he spoke with Mol shortly after plaintiffs were injured and Mol stated "he allowed them to erect the hammock." Additionally, plaintiffs, approximately six months before they were injured, spoke with a campground representative when touring the campground as a potential wedding venue. Plaintiff Gibson recalled a conversation with the representative concerning the poles at the campsite where they were injured:

"Q. Okay. Anything else you remember her telling you about

that campsite?

A. She did tell us that the two poles there we can use. She

said they hung banners there. She said we could use it for whatever

we wanted.

Q. Was banners the only specific example she gave you?

A. Banners were the only thing she said that they used them

for, but she said that we could use them.

Q. Did she say—did she say that they could be used for hammocks?

A. She didn't say anything in specific. She just said that we could use them for whatever we wanted.

Q. And the only specific example she gave was banners?

A. Yeah. I mean, she might have named off other things, but all I remember is banners."

¶ 12 Mol, as part of his duties as campground manager, completed grounds inspections of the campsites twice a year. Mol's inspections included visual inspections of the campsites' poles. He would specifically look at the poles and, if there were no visual defects, he would mark the inspection record as satisfactory. If, on the other hand, his visual inspection revealed the poles needed maintenance or repair, he would indicate such upon the inspection logs. Mol's inspections of the poles in question never revealed any issues, nor did he receive any complaints about said poles. Mol completed an inspection of the poles four days prior to plaintiffs' injuries and found no indication of any defective or unsafe condition. Additionally, plaintiff Gibson and another member of their party who attached the hammock to the poles indicated they visually and physically inspected the poles and determined they appeared structurally sound.

¶ 13                                D. Award of Summary Judgment

¶ 14 In 2023, the circuit court granted defendant summary judgment, finding plaintiffs, based upon the materials submitted, could not prove defendant's conduct was willful and wanton.

¶ 15 This appeal followed.

¶ 16                                II. ANALYSIS

¶ 17 On appeal, plaintiffs argue summary judgment should not have been granted for

defendant because the material submitted was sufficient to establish a triable question as to whether defendant's conduct was willful and wanton conduct. Defendant disagrees.

¶ 18                                      A. Plaintiffs' Briefing

¶ 19          As an initial matter, we must address the sufficiency of plaintiffs' briefing on appeal. As defendant raises in its appellee brief, and to which plaintiffs do not respond in their reply brief, plaintiffs' initial brief fails to meet many of the requirements of our supreme court rules. For instance, in violation of Illinois Supreme Court Rule 341(h)(6) and(h)(7) (eff. Oct. 1, 2020), the statement of facts and argument sections of plaintiffs' brief do not adequately reference the pages of the record relied upon. In fact, not only do these sections of plaintiffs' brief fail to adequately reference the pages of the record relied upon, but our review of the record indicates many of the facts cited by plaintiffs in support of their arguments lack record support. While this court would certainly be within its discretion to strike plaintiffs' brief and dismiss the appeal for the failure to comply with our supreme court rules, we will proceed to address the appeal on the merits and disregard any unsupported factual allegations. See, *e.g.*, *Ittersagen v. Advocate Health & Hospitals Corp.*, 2021 IL 126507, ¶ 37, 186 N.E.3d 378. We admonish plaintiffs' counsel to carefully follow the supreme court rules in future submissions to this court.

¶ 20                                  B. Applicable Standard of Review

¶ 21          It is undisputed this court should review *de novo* the issue of whether summary judgment was appropriately awarded to defendant. See, *e.g.*, *A.B.A.T.E. of Illinois, Inc. v. Quinn*, 2011 IL 110611, ¶ 22, 957 N.E.2d 876. Under *de novo* review, we consider anew the facts and the applicable law and determine whether the circuit court's ruling was correct. *Nichols v. Certain Underwriters at Lloyd's London*, 331 Ill. App. 3d 555, 558-59, 771 N.E.2d 595, 598 (2002).

¶ 22                                 C. Legal Standards for Summary Judgment

¶ 23    Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2022). "A genuine issue of material fact exists 'where the material facts are disputed or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts.' " *Carney v. Union Pacific R.R. Co.*, 2016 IL 118984, ¶ 25, 77 N.E.3d 1 (quoting *Mashal v. City of Chicago*, 2012 IL 112341, ¶ 49, 981 N.E.2d 951). In determining whether a genuine issue of material fact exists, the material submitted is construed "strictly against the moving party and liberally in favor of the opponent." *Id.*

¶ 24                    D. The Question of Willful and Wanton Conduct

¶ 25    In this case, the circuit court granted defendant summary judgment, finding plaintiffs, based upon the materials submitted, could not prove defendant's conduct was willful and wanton.

¶ 26    Section 3-106 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/3-106 (West 2016)), which is undisputedly applicable to this case, provides:

> "Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury."

Where section 3-106 is undisputedly applicable, the plaintiff must plead and prove the defendant's willful and wanton conduct proximately caused the injuries. *Torres*, 2020 IL App (3d) 190248, ¶ 22; see *Murphy v. Springfield Park District*, 2019 IL App (4th) 180662, ¶ 51, 146 N.E.3d 143.

¶ 27 The standard of "willful and wanton conduct" is a formidable one. *Thurman v. Champaign Park District*, 2011 IL App (4th) 101024, ¶ 13, 960 N.E.2d 18; see *Bubb v. Springfield School District 186*, 167 Ill. 2d 372, 378, 657 N.E.2d 887, 891 (1995) (noting section 3-106 was intended "to prevent the diversion of public funds from their intended purpose to the payment of damage claims"). Section 1-210 of the Tort Immunity Act (745 ILCS 10/1-210 (West 2016)) defines " '[w]illful and wanton conduct' " as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." See *Torres*, 2020 IL App (3d) 190248, ¶ 25 (addressing instances where courts have found willful and wanton conduct to exist).

¶ 28 The question of whether a defendant engaged in willful and wanton conduct is generally a matter for a trier of fact to decide. *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 245, 864 N.E.2d 176, 194 (2007). However, the question may, under proper circumstances, be disposed of by a motion for summary judgment. *Id.*

¶ 29 When a defendant moves for summary judgment on the question of willful and wanton conduct, the relevant inquiry is whether the material submitted, viewed in the light most favorable to the plaintiff, is such that a reasonable trier of fact might find the defendant engaged in willful and wanton conduct.

¶ 30 E. Summary Judgment for Defendant

¶ 31 Plaintiffs assert the material submitted was sufficient to establish a triable question as to whether defendant engaged in willful and wanton conduct by (1) failing to convey or inform

them of its safety policy prohibiting the attachment of hammocks to the campsite poles, (2) giving them permission to attach a hammock to the campsite poles despite its safety policy, and (3) failing to meaningfully inspect the campsite poles. We address each assertion in turn.

¶ 32    First, plaintiffs assert the material submitted was sufficient to establish a triable question as to whether defendant engaged in willful and wanton conduct by failing to convey or inform them of its safety policy prohibiting the attachment of hammocks to the campsite poles. We disagree. Initially, we note the Third District, contrary to plaintiffs' suggestion in this appeal, did not hold defendant's alleged failure to convey or inform plaintiffs of its safety policy was sufficient to show willful and wanton conduct. See *Torres*, 2020 IL App (3d) 190248, ¶¶ 26-28. Even assuming, *arguendo*, we could find the ordinance at issue (1) prohibited the attachment of hammocks to campsite poles as asserted by plaintiffs and not contested by defendant and (2) established a safety policy as asserted by plaintiffs but contested by defendant, we are not convinced the failure to *explicitly* convey or inform plaintiffs of the policy would, as a matter of law, constitute willful and wanton conduct. Critically, the ordinance, which was undisputedly published and carries the weight of law, needs no further declaration of itself to have its existence imputed upon plaintiffs. See *People v. Lander*, 215 Ill. 2d 577, 588, 831 N.E.2d 596, 603 (2005) ("[A]ll citizens are charged with knowledge of the law."). Plaintiffs have not cited any authority stating the failure to warn of the existence of a published ordinance is evidence of willful and wanton conduct. Accordingly, we find the material submitted on this basis was insufficient to establish a triable question of willful and wanton conduct.

¶ 33    Second, plaintiffs assert the material submitted was sufficient to establish a triable question as to whether defendant engaged in willful and wanton conduct by giving them permission to attach a hammock to the campsite poles despite its safety policy. We disagree. The

- 8 -

Third District previously ruled plaintiffs had sufficiently set forth a claim based upon defendant allegedly "specifically [telling] plaintiffs the poles 'were there for any camping or recreational purpose they so desired' without any qualification or indication that doing so would be against the park district's policy." *Torres*, 2020 IL App (3d) 190248, ¶ 27. Discovery conducted following the Third District's decision, however, failed to support the allegation concerning the statement made to plaintiffs. While plaintiff Gibson testified they were told by a campsite representative they could use the poles "for whatever [plaintiffs] wanted," we find the statement from the representative, considered in its context, is insufficient as a matter of law to find defendant gave plaintiffs permission to attach a hammock to the poles despite its safety policy providing otherwise; the representative made the statement six months earlier, when giving a tour of the campground as a potential wedding venue and, in making the statement, referenced hanging banners from the poles. Likewise, while Officer Cogdal testified Mol stated he "allowed" plaintiffs to hang their hammock, we find the statement from Mol, when considered with the other evidence, is insufficient as a matter of law to find defendant gave plaintiffs permission to attach a hammock to the poles despite its safety policy providing otherwise; neither plaintiffs nor Mol testified to a conversation in which Mol gave plaintiffs permission to hang their hammock, indicating, at best, Mol was simply aware the hammock had been hung by plaintiffs and did not enforce the ordinance. See 745 ILCS 10/2-103 (West 2016) ("A local public entity is not liable for an injury caused *** by failing to enforce any law."). Accordingly, we find the material submitted on this basis was insufficient to establish a triable question of willful and wanton conduct.

¶ 34 And last, plaintiffs assert the material submitted was sufficient to establish a triable question of whether defendant engaged in willful and wanton conduct by failing to meaningfully inspect the campsite poles. We disagree. Mol, as part of his duties as campground manager,

conducted visual inspections of the campsite poles. In fact, he inspected the poles in question four days prior to plaintiffs' injuries and found no indication of any defective or unsafe condition. Additionally, plaintiff Gibson and another member of their party who attached the hammock to the campsite poles indicated they visually and physically inspected the poles while attaching the hammock to the poles and determined they appeared structurally sound. We find the absence of further inspection to discover latent defects in the campsite poles could not, as a matter of law, constitute willful and wanton conduct. See *Barr v. Cunningham*, 2017 IL 120751, ¶ 18, 89 N.E.3d 315 (finding the fact the defendant did not take additional steps to prevent the plaintiff's injuries did not rise to the level of willful and wanton conduct). Accordingly, we find the material submitted on this basis was insufficient to establish a triable question of willful and wanton conduct.

¶ 35        In sum, this court, after considering the material submitted in the light most favorable to plaintiffs, is not convinced a reasonable trier of fact could find defendant's conduct was willful and wanton. Because the material submitted was insufficient to establish a triable question as to whether defendant's conduct was willful and wanton, summary judgment for defendant was appropriate. We need not consider the other grounds upon which defendant asserts it was also entitled summary judgment.

¶ 36                              F. Additional Matters

¶ 37        Before concluding, we note plaintiffs have cited *Wilson v. Breese Elementary District No. 12*, 2022 IL App (5th) 210056-U, as persuasive authority in support of their position. *Wilson*, however, is distinguishable in that the material submitted in this case does not show defendant removed a safety feature. Plaintiffs have also cited evidence indicating defendant revised its campground guidelines after they were injured to explicitly prohibit the use of

hammocks. The subsequent remedial measure of defendant is not, however, relevant to the issue before this court. Third, plaintiffs have asserted defendant attempted to hide or conceal relevant evidence related to inspection checklists during discovery, which they note is "incumbent" for this court to know. Plaintiffs have not, however, developed this argument or explained its significance to the issue before this court. See *Hobby Lobby Stores, Inc. v. Sommerville*, 2021 IL App (2d) 190362, ¶ 41, 186 N.E.3d 67 ("Parties must support their arguments in this court with appropriate citations of the record and pertinent legal authority."). And last, plaintiffs have argued the circuit court committed various analytical errors in reaching its decision to award defendant summary judgment. Given the applicable standard of review and our analysis above, it is unnecessary to address plaintiffs' argument. See *Nichols*, 331 Ill. App. 3d at 558-59.

¶ 38                                  III. CONCLUSION

¶ 39          For the reasons stated, we affirm the circuit court's judgment.

¶ 40          Affirmed.