2024 IL App (1st) 231034-U

No. 1-23-1034

Order filed January 26, 2024

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| NIRMAL SEENU, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | |
| | ) | No. 21 L 4665 |
| RADIX TRADING, LLC, an Illinois Limited Liability | ) | |
| Company; BENJAMIN BLANDER, an Individual; and | ) | |
| MICHAEL RAUCHMAN, an Individual, | ) | Honorable |
| | ) | Daniel J. Kubasiak, |
| Defendants-Appellees. | ) | Judge presiding. |

JUSTICE NAVARRO delivered the judgment of the court.
Presiding Justice Mitchell and Justice Mikva concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the circuit court's grant of summary judgment to defendants on plaintiff's claims of violations of the Illinois Wage Payment and Collection Act (820 ILCS 115/1 *et seq.* (West 2020)), breach of contract, unjust enrichment and promissory estoppel.

¶ 2    After Radix Trading, LLC (Radix) terminated the employment of Nirmal Seenu, the company did not award him performance bonuses for his work during the first and second quarters

of 2020. Believing he was entitled to those bonuses, Seenu sued Radix and its managing members, Benjamin Blander and Michael Rauchman (collectively, defendants), for violating the Illinois Wage Payment and Collection Act (Wage Payment Act) (820 ILCS 115/1 *et seq.* (West 2020)), breach of contract, unjust enrichment and promissory estoppel. On defendants' motion, the circuit court granted summary judgment in their favor on all counts. Seenu now appeals the judgment of the circuit court, contending that the court erred by granting summary judgment to defendants on all counts. For the reasons that follow, we affirm the circuit court's grant of summary judgment in favor of defendants.

¶ 3                                    I. BACKGROUND

¶ 4                            A. Seenu's Employment with Radix

¶ 5     Radix is a proprietary trading firm based in Chicago. Blander and Rauchman own 99% of the company and manage its day-to-day operations. Every quarter, Radix distributed bonuses to employees based on their performance the previous quarter. Although Radix distributed bonuses regularly, it did not have a written or formal bonus program, and the company did not use an objective formula to determine bonuses. Rather, Blander and Rauchman made a subjective determination taking into consideration a variety of factors, but most notably the performance of Radix and how each employee contributed to, or detracted from, that performance in their subjective opinion. Radix only distributed bonuses to employees who had been employed for the entire quarter and still remained employed on the bonus distribution date.

¶ 6     Seenu is an experienced quantitative technologist in the field of high-performance computing and supercomputing. In August 2015, Radix hired Seenu to help build out its computing infrastructure. Pursuant to an offer letter, which Seenu signed, his base salary was $175,000 per year and his employment was terminable at-will. In addition, Seenu's offer letter stated that he

"shall also be eligible for performance bonuses. Further, [his] total compensation during [his] first full year of employment, which shall include the sum of all base salary and performance bonuses earned during that first full year, shall be no less than $200,000." At Radix, Seenu was responsible for, in part, building, monitoring and optimizing its trading and research infrastructure.

¶ 7    While employed by Radix, Seenu received a bonus for every quarter through 2019. Although his base salary remained essentially the same at all times, the amount of his bonus generally increased. In 2016, he received bonuses totaling approximately $60,000, and by 2019, his cumulative bonuses had increased to approximately $280,000. According to Seenu's deposition, the amount of his bonus "always depended on how fast [he] was able to get the new resources online and available to the [company's] researchers," though he was unaware of a specific formula to calculate his bonus. According to an affidavit from Seenu, he and Radix "agreed that while the base salary would remain constant, [he] would receive quarterly performance bonuses to complement [his] base salary." During his deposition, Seenu acknowledged that no one from Radix ever told him he would get a fixed percentage of the bonus pool as a bonus or the same percentage relative to what other employees received. Despite Seenu receiving a bonus every quarter through 2019, in a declaration from Rauchman submitted in connection with the case, he asserted that he "never told Seenu that Radix bonuses [were] guaranteed, nor did [he] ever guarantee [Seenu] a bonus amount or identify any formula to be used for bonus calculations."

¶ 8    In late 2019, Seenu spearheaded a multi-month effort to build a new data center for Radix, which was integral to the company's future growth plans. In February 2020, as the new data center became functional, Seenu had a conversation with Rauchman about his compensation. According to Seenu's deposition, he requested additional guaranteed compensation, even at the expense of

his potential bonus. In response, Rauchman told him that it would be "foolish" to take himself "out of the bonus pool," and when Radix became more profitable, Seenu would be "signing off a lot of [his] bonus." Seenu agreed with Rauchman, so he dropped his request for additional compensation. In his deposition, Seenu acknowledged that he was never given a guarantee about total compensation following this conversation with Rauchman. But, according to Seenu's affidavit, Rauchman:

> "repeatedly assured and promised [him] that [he] would be compensated for [his] services to Radix and paid a [first quarter of 2020] bonus as part of [his] annual compensation. In particular, Rauchman stated that [he] would receive a large bonus based upon Radix'[s] profitability stemming from [his] successful build-out of the new data center in early 2020 and the high volatility of the markets."

Conversely, in Rauchman's declaration, he stated that he never "promise[d] or represent[ed] to [Seenu] that [Seenu] would receive any additional compensation or bonus award for his work on the data center build[-]out."

¶ 9 Following the build-out of the data center, Seenu took an approved trip out of the country. However, according to Rauchman's declaration, the data center was "unstable" and "needed significant adjustments." On May 8, 2020, while Seenu was still out of the country, Radix terminated his employment. According to Rauchman's declaration, Radix terminated Seenu's employment due to, among other reasons, his "ongoing interpersonal friction with co-coworkers and the resulting costs to Radix." As part of his termination, Radix offered Seenu a severance payment of $100,000 in exchange for a release of claims against Radix and an acknowledgement that he had been paid all bonuses due to him, among other acknowledgements. In response to the severance offer, Seenu texted a former Radix employee to discuss his options and stated: "I didn't

have [a] guaranteed bonus or compensation number. I assumed that [Radix] would compensate new [*sic*] appropriately…so much for that." Seenu ultimately rejected Radix's severance offer.

¶ 10    Two weeks after Radix terminated Seenu's employment, it distributed bonuses based on employees' performances during the first quarter of 2020. Seenu did not receive a bonus. Seenu also did not receive a bonus based on his partial employment during the second quarter of 2020.

¶ 11                                    B. The Litigation

¶ 12    The following year, Seenu sued Radix, Blander and Rauchman for violations of the Wage Payment Act (820 ILCS 115/1 *et seq.* (West 2020)), breach of contract, unjust enrichment and promissory estoppel, all based on Seenu's alleged entitlement to performance bonuses in 2020.

¶ 13    The next month, Seenu amended his complaint. In the amended complaint, which is the operative pleading in this case, Seenu asserted that he received a quarterly bonus every quarter during his approximately five-year employment with Radix. Seenu claimed that, due to his contributions to Radix, Blander and Rauchman repeatedly assured and promised him that he would receive a large bonus directly tied to Radix's increased profitability, which stemmed from his successful build-out of the company's new data center. However, according to Seenu, when he requested performance bonuses from Blander and Rauchman, they dismissed and ignored his request. Seenu asserted he was entitled to bonuses far in excess of the amount offered to him as part of Radix's severance agreement. Due to Radix's failure to pay him the performance bonuses, Seenu alleged a violation of the Wage Payment Act (*id.*) against each of Radix, Blander and Rauchman (Counts I through III, respectively) and a breach of contract against Radix (Count IV) based on his employment agreement. Additionally, in the alternative to his breach of contract count, Seenu brought a claim for unjust enrichment against Radix (Count V). Lastly, Seenu raised a claim of promissory estoppel (Count VI) against Radix.

¶ 14    During discovery, including through a motion to compel, Seenu sought information from defendants about Radix's bonus system, including the amount of bonuses distributed to Radix's other employees throughout the years. The court allowed Seenu to obtain such discovery for the first, second and third quarters of 2020, but denied his attempt to discover the amount of bonuses paid to Radix employees prior to 2020. Seenu subsequently filed a motion to reconsider. The court denied the motion finding any information about the bonuses of Radix's employees prior to 2020 was irrelevant to the issues in the case.

¶ 15    Thereafter, defendants filed a joint motion for summary judgment on all counts of Seenu's amended complaint. Defendants contended that his Wage Payment Act, breach of contract and promissory estoppel claims all required Seenu to prove that they promised to pay him bonuses that they withheld. Defendants highlighted that Seenu's employment agreement only guaranteed him a base salary and eligibility for bonuses, but the agreement did not provide a contractual obligation to pay him the bonuses sought and they made no promises to pay him the same. And thus, according to defendants, Seenu's Wage Payment Act, breach of contract and promissory estoppel causes of action failed. Lastly, defendants asserted that Seenu's unjust enrichment claim failed because it was based on an allegation of an express contract, which, by law, precluded a successful claim. In response, Seenu contended that his employment agreement unequivocally obligated Radix to compensate him with performance bonuses. Notwithstanding his employment agreement, Seenu argued that there was sufficient evidence of defendants' unequivocal promise and mutual assent to entitle him to performance bonuses in 2020.

¶ 16    Following briefing, the circuit court found that Seenu's claims for a violation of the Wage Payment Act, breach of contract and promissory estoppel failed because he could not establish that Radix made an unequivocal guarantee to pay him any bonus, either through his employment

agreement or an oral promise during the course of his employment. In addition, the court found these claims failed because Seenu never met the conditions for bonuses in 2020 and he failed to allege an amount he was purportedly owed. As to Seenu's unjust enrichment claim, the court highlighted there was an express contract governing the parties' relationship, including Seenu's compensation, and therefore, the claim failed. Consequently, the court granted defendants' motion for summary judgment.

¶ 17    Seenu timely appealed.

¶ 18                                II. ANALYSIS

¶ 19    Seenu contends that the circuit court erred in granting defendants' motion for summary judgment on all counts.[1] Summary judgment is proper where the pleadings, depositions, affidavits, and admissions on file demonstrate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Carney v. Union Pacific R.R. Co.*, 2016 IL 118984, ¶ 25. "A genuine issue of material fact precluding summary judgment exists where the material facts are disputed or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts." *Mashal v. City of Chicago*, 2012 IL 112341, ¶ 49. When determining whether a genuine issue of material fact exists, we construe "the evidence in the light most favorable to the nonmoving party and strictly against the moving party." *Johnson v.*

---

[1] In making this contention, Seenu asserts that the circuit court erred in granting summary judgment on Count I, which he states was a claim for a violation of the Wage Payment Act, Count II, which he states was a claim for breach of contract, Count III, which he states was a claim for unjust enrichment, and Count IV, which he states was a claim for promissory estoppel. However, Seenu's amended complaint raised three counts of a violation of the Wage Payment Act (Counts I, II and III against Radix, Blander and Rauchman, respectively), one count for breach of contract (Count IV), one count for unjust enrichment (Count V) and one count for promissory estoppel (Count VI). Indeed, in the circuit court's order granting defendants' motion for summary judgment, the court noted that Seenu's amended complaint contained six counts. However, later in its order, the court apparently combined all three Wage Payment Act claims into one count, that being Count I, resulting in the remaining counts being misnumbered.

*Armstrong*, 2022 IL 127942, ¶ 31. The disposition of litigation on "[s]ummary judgment is a drastic measure," and such a motion "should only be granted if the movant's right to judgment is clear and free from doubt." *Seymour v. Collins*, 2015 IL 118432, ¶ 42. We review the circuit court's grant of summary judgment *de novo. Id.* Additionally, to the extent this appeal requires us to interpret Seenu's employment contract, that is a question of law that we also review *de novo. In re Marriage of Dynako*, 2021 IL 126835, ¶ 15.

¶ 20                                A. Wage Payment Act Claims (Counts I, II and III)

¶ 21    We turn to Seenu's argument that the circuit court erred in granting summary judgment to defendants on his Wage Payment Act claims. The Wage Payment Act applies to nearly every employee and employer in Illinois with limited exceptions not relevant here. 820 ILCS 115/1 (West 2020). The law requires, among other obligations, that employers timely "pay the final compensation of separated employees in full." *Id.* § 115/5. Under the law, "final compensation" represents various forms of compensation including any "earned bonuses" and "any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the 2 parties." *Id.* § 115/2. The term "earned bonuses" is not defined by the Wage Payment Act (see *Camillo v. Wal-Mart Stores, Inc.*, 221 Ill. App. 3d 614, 619 (1991)), though the statute charges the Illinois Department of Labor with promulgating regulations to administer it. See 820 ILCS 115/12 (West 2020). As such, we afford "substantial weight and deference" to these regulations. *McLaughlin v. Sternberg Lanterns, Inc.*, 395 Ill. App. 3d 536, 544 (2009).

¶ 22    In turn, the Illinois Administrative Code defines the term "bonus" as "compensation given in addition to the required compensation for services performed." 56 Ill. Adm. Code 300.500 (2014). To come under the purview of the Wage Payment Act, "the bonus must be earned." *Id.*

"An employee has a right to an earned bonus when there is an unequivocal promise by the employer and the employee has performed the requirements set forth in the bonus agreement between the parties and all of the required conditions for receiving the bonus set forth in the bonus agreement have been met." 56 Ill. Adm. Code 300.500(a) (2014). Unlike an earned bonus, "[a] discretionary bonus is when the terms associated with the earning of the bonus are indefinite or uncertain, such as bonus being upon a positive evaluation of the 'employee's performance' and not when the earning of a bonus is based on objective factors such as length of service, attendance or sign-on or relocation incentives." 56 Ill. Adm. Code 300.500(d) (2014).

¶ 23    As to "final compensation" under the Wage Payment Act including "any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the 2 parties" (820 ILCS 115/2 (West 2020)), the statute's use of the word "agreement" in addition to the term "employment contract" indicates that an employee's right to "any other compensation" need not be in writing. *Zabinsky v. Gelber Group, Inc.*, 347 Ill. App. 3d 243, 249 (2004). To this end, an employee's right to "any other compensation" can occur through the "manifestation of mutual assent on the part of two or more persons *** without the formalities and accompanying legal protections of a contract." *Id.*

¶ 24    In the instant case, the undisputed evidence demonstrates that, after Seenu's first year of employment with Radix, the only bonus he could obtain was a discretionary bonus, not an earned bonus. In Blander's deposition, he testified that Rauchman was principally in charge of awarding company bonuses. And in the deposition and declaration from Rauchman, he asserted that Radix did not award bonuses using objective metrics, but rather subjectively by taking into consideration a variety of factors, but most notably the performance of Radix and how each employee contributed to, or detracted from, that performance. Nothing in the record contradicts these assertions. In fact,

during Seenu's deposition, he acknowledged that, when discussing bonuses, Rauchman told him these were principal factors. In other words, Radix awarded bonuses based on indefinite and uncertain terms, namely the positive evaluation of the employee's performance, and not upon objective factors. Therefore, Radix's employee bonuses were discretionary, not earned. See 56 Ill. Adm. Code 300.500(d) (2014).

¶ 25    Nevertheless, Seenu points to his employment agreement, *i.e.*, the signed offer letter, and conversations he had with Rauchman to establish that Radix made an unequivocal promise of bonuses to him. However, Seenu's employment agreement only stated that he was "eligible for performance bonuses." Being "eligible" for a bonus is not an unequivocal promise for a bonus. See *Hess v. Bresney*, 784 F.3d 1154, 1160-62 (7th Cir. 2015) (analyzing the Wage Payment Act and finding that contract language making a former employee " 'eligible to receive' " a bonus was not "the kind of unequivocal promise that is required under [the Wage Payment Act]," as "[e]ligibility, of course, is no guarantee"). Notably, during Seenu's first year of employment with Radix, his employment agreement guaranteed him at least $200,000 in total compensation, which included his base salary of $175,000. Stated otherwise, Radix guaranteed him a performance bonus of at least $25,000 that year. But Radix provided no similar guarantee for any years of employment beyond his first year. This omission buttresses the conclusion that, while Seenu was eligible for performance bonuses during his second year of employment and beyond, Radix did not unequivocally promise him such bonuses. Seenu even acknowledged this reality in a text with a former Radix employee when discussing his severance options. In that text, which Seenu acknowledged sending during his deposition, he stated: "I didn't have [a] guaranteed bonus or compensation number. I assumed that [Radix] would compensate new [*sic*] appropriately…so

much for that." This, too, supports the conclusion that Seenu never had an unequivocal promise of a bonus beyond his first year of employment based on his employment agreement.

¶ 26    As to Seenu's conversations with Rauchman, Seenu described them in his deposition and a later-filed affidavit. In his deposition, he described asking Rauchman for more guaranteed compensation, even at the expense of his potential bonus. In response, Rauchman dissuaded him from taking himself out of the bonus pool and told Seenu that when Radix became more profitable, Seenu would just be "signing off a lot of [his] bonus." While Seenu highlights this deposition testimony, additional deposition testimony about this conversation provides the full context for Rauchman's statements to Seenu. Later in Seenu's deposition, he acknowledged agreeing with Rauchman that it would be foolish to take himself out of the bonus pool. As a result, Seenu testified that he "dropped [his] request for more guaranteed compensation" and "settled back to the compensation the way it was." When asked if he asked for a guaranteed yearly total compensation amount, Seenu stated that he tried, but Rauchman talked him out of such an ask. Seenu ultimately conceded during his deposition that he was not given a compensation guarantee by Rauchman. In his deposition, Seenu also asserted that, when he asked for more guaranteed compensation: "[T]hey wouldn't give it to me, and they gave me the runaround saying I'll be compensated appropriately when they make huge profits, and as it turns out, they just cut me before—well, they cut me after making a huge profit and not compensating [me] properly." Viewing Seenu's deposition testimony in the light most favorable to him, Rauchman never made an unequivocal promise to him for a bonus. Black's Law Dictionary defines "unequivocal" as "[u]nambiguous; clear; free from uncertainty." Black's Law Dictionary (11th ed. 2019). Nowhere in Rauchman's conversation with Seenu did he unambiguously inform Seenu that he would receive a performance

bonus. Rather, as defendants argue, Rauchman obstructed and obfuscated Seenu's attempts to guarantee more compensation.

¶ 27    Turning to Seenu's affidavit, he averred that, in February 2020, Rauchman "repeatedly assured and promised" him a large bonus in the first quarter of 2020 based on the successful build-out of the new data center. Taking Seenu's affidavit in isolation, such averments would seemingly raise a triable issue of fact as to whether Rauchman made an unequivocal promise to award bonuses to him. See *Carney*, 2016 IL 118984, ¶ 25; *Mashal*, 2012 IL 112341, ¶ 49. However, in Seenu's deposition, which he gave before signing his affidavit, he discussed his February 2020 conversation with Rauchman. Therein, Seenu testified that he mentioned the data center build-out and how it would make Radix more profitable. Based on this increase in profitability, Seenu asked Rauchman: "What is going to be my guaranteed compensation going forward? [Rauchman] said, we will have that discussion as part of the next quarterly review." When Seenu was further asked if he had any other conversations with Rauchman or anyone else at Radix "regarding a guaranteed compensation amount," Seenu responded that he had not.

¶ 28    It is well established that "a party's later submission of an affidavit inconsistent with that party's deposition testimony will not raise a disputed issue of fact to prevent the entry of summary judgment." *Morris v. Margulis*, 197 Ill. 2d 28, 37 (2001). Although "a witness' affidavit may expand and clarify opinions, estimates, inferences, and uncertain summary statements made in a prior deposition," the affidavit cannot "contradict deliberate testimony relating to concrete facts." *Wehde v. Regional Transportation Authority*, 237 Ill. App. 3d 664, 683 (1992). In Seenu's deposition, he unmistakenly asserted that, when he tried to ask Rauchman about an increase in compensation as a result of the data center build-out, Rauchman never provided him any assurances about additional compensation and that this was the only conversation he had with

Rauchman on the subject. Seenu's contradictory averments in his affidavit cannot overcome his deposition testimony. See *Morris*, 197 Ill. 2d at 37. Consequently, the record fails to demonstrate there is a genuine issue of material fact as to whether Rauchman or Blander made an unequivocal promise to Seenu to entitle him to an earned bonus in the first quarter and second quarter of 2020. See *McLaughlin*, 395 Ill. App. 3d at 544 ("If no such unequivocal promise was made, then the employee is not entitled to" an earned bonus under the Wage Payment Act).

¶ 29    Still, citing to *Schultze v. ABN AMRO, Inc.*, 2017 IL App (1st) 162140, Seenu argues that Radix's uninterrupted past practice of awarding him quarterly bonuses was the manifestation of mutual assent to continue awarding him bonuses in the first quarter and second quarter of 2020. In *Schultze*, an executive at a bank, whose employment agreements were solely oral, had a more than 20-year history of receiving a performance bonus based on objective factors and subjective factors. *Id.* ¶¶ 3-17. Upon the bank terminating his employment, the executive sued under the Wage Payment Act for an earned, but unpaid, bonus of more than $2 million for the year 2008. *Id.* ¶ 19. Following a bench trial, the trial court awarded him the bonus. *Id.*

¶ 30    The bank appealed, and this court rejected the bank's argument that the executive was not entitled to a bonus because there was no formal contract detailing such compensation. *Id.* ¶ 23. The court noted that an employee's entitlement to such compensation could manifest through "mutual assent by conduct alone, including past practice." *Id.* The court observed that, for more than 20 years, the executive received a performance bonus, and thus, the bank's "past conduct of awarding [him] an annual bonus for more than two decades manifested an agreement to award a bonus as a component of [his] total compensation." *Id.* ¶ 24. Additionally, the court noted that the bank sent the executive "a letter notifying him that he was entitled to a bonus for performance year 2008," which only could indicate "an unequivocal promise to pay a bonus." *Id.* Consequently, this

court found "there was an 'agreement' and 'unequivocal promise' that [the executive's] compensation included a [non-discretionary] bonus."

¶ 31    However, there are striking differences between the facts of *Schultze* and the instant case. First, in *Schultze*, the bank executive had to rely on past practice to demonstrate his entitlement to a yearly performance bonus because he operated under oral contracts alone. This is in stark contrast to the instant case, where Seenu had a written employment agreement with Radix, which made him only *eligible* for a bonus following his first year of employment. See *Hess*, 784 F.3d at 1162 ("[e]ligibility, of course, is no guarantee"). Second, in *Schultze*, the executive received a letter from the bank notifying him that he was entitled to a bonus, which constituted an unequivocal promise for a bonus. Here, in contrast, as discussed above, Seenu never received an unequivocal promise from Radix, Rauchman or Blander for bonuses in 2020. And third, in *Schultze*, the bank had a robust methodology for calculating performance bonuses that included objective metrics whereas, in the instant case, Radix's performance bonuses were purely based on subjective factors, and thus, wholly discretionary. See 56 Ill. Adm. Code 300.500(d) (2014). Given these critical differences, *Schultze* is inapposite, and Seenu's past history of bonuses does not entitle him to them in 2020.

¶ 32    In light of the foregoing, even when viewing the evidence in the light most favorable to Seenu and strictly against defendants, Seenu has not created a triable issue of fact that he was entitled to bonuses in 2020 under the Wage Payment Act. As a result, the circuit court properly granted summary judgment to Radix on Count I of Seenu's amended complaint. See *McLaughlin*, 395 Ill. App. 3d at 544, 546 (where an employer did not owe a former employee a bonus, the circuit court properly granted the employer's motion for summary judgment on the former employee's Wage Payment Act claim).

¶ 33    Counts II and III of Seenu's amended complaint were Wage Payment Act violation claims against Blander and Rauchman, respectively, based on them being managing members of Radix. See 820 ILCS 115/13 (West 2020) (providing liability to agents of an employer who "knowingly permit such employer to violate the provisions of [the Wage Payment Act]"). As liability on Counts II and III are predicated upon the same facts as liability on Count I, and we have just concluded that the circuit court properly granted summary judgment to Radix on Count I, the court also properly granted summary judgment to Blander and Rauchman, respectively, on Counts II and III of Seenu's amended complaint.

¶ 34                    B. Breach of Contract Claim (Count IV)

¶ 35    We now turn to Seenu's argument that the circuit court erred in granting summary judgment to Radix on his breach of contract claim. In order to prove a breach of contract, the plaintiff must prove that: (1) there was an enforceable contract; (2) he substantially performed his obligations; (3) the defendant breached its obligations; and (4) he suffered damages due to the defendant's breach. *Ivey v. Transunion Rental Screening Solutions, Inc.*, 2022 IL 127903, ¶ 28. If there is a genuine issue of material fact as to whether the defendant breached an agreement with the plaintiff, summary judgment is improper. See *Finch v. Illinois Community College Board*, 315 Ill. App. 3d 831, 837 (2000).

¶ 36    As we have discussed previously, the only instance in which Seenu's employment agreement guaranteed him a bonus was his first year of employment, where he was assured a bonus of at least $25,000. Beyond that, his employment agreement provided no assurances of a bonus and only made him *eligible* for a bonus. See *Hess*, 784 F.3d at 1162 (7th Cir. 2015) (asserting that "[e]ligibility, of course, is no guarantee" and the plaintiff "might very well be eligible for a bonus, but due to a host of factors, not receive one"). Because the undisputed facts show that Radix's

employment agreement never guaranteed Seenu a bonus beyond his first year of employment, there is no genuine issue of material fact as to whether Radix breached its agreement with Seenu. Therefore, the circuit court properly granted summary judgment to Radix on Count IV of Seenu's amended complaint.

¶ 37                           C. Unjust Enrichment Claim (Count V)

¶ 38    We next turn to Seenu's argument that the circuit court erred in granting summary judgment to Radix on his unjust enrichment claim. Seenu posits that, although an express agreement initially governed his relationship with Radix, they later entered into an oral agreement through Seenu's conversations with Rauchman in February 2020 to pay Seenu a bonus in lieu of increasing his base salary. According to Seenu, based on this promise, he continued to work for Radix to his detriment and allowing Radix to retain the benefits of his continued services constituted unjust enrichment.

¶ 39    "Unjust enrichment is an equitable remedy based upon a contract implied in law, available only when no express contract governs the parties' relationship and there is no adequate remedy at law." *Keystone Montessori School v. Village of River Forest*, 2021 IL App (1st) 191992, ¶ 98. In order to prevail on a claim of unjust enrichment, the plaintiff must demonstrate "that the defendant retained a benefit to the plaintiff's detriment and that the retention violates fundamental principles of justice, equity, and good conscience." *Id.* The theory of unjust enrichment does not apply when "an express contract, oral or written, governs the parties' relationship." *Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 25.

¶ 40    Initially, we note that, by arguing his February 2020 conversations with Rauchman established an oral agreement to provide him bonuses, Seenu sinks his own unjust enrichment claim because the theory does not apply when "an express contract, oral or written, governs the

parties' relationship." *Id.* Regardless, when arguing that Radix's alleged retention of Seenu's continued services violated fundamental principles of justice, equity, and good conscience, Seenu does so in a conclusory fashion and makes no attempt to explain how Radix's alleged retention of Seenu's continued services (while still paying him a salary) violated fundamental principles of justice, equity, and good conscience. "It is not enough that a defendant has received a benefit; rather, circumstances must exist such that the defendant's retention of the benefit would violate the fundamental principles of justice, equity, and good conscience." *C. Szabo Contracting, Inc. v. Lorig Construction Co.*, 2014 IL App (2d) 131328, ¶ 24. By failing to develop this argument beyond a conclusory assertion, he has forfeited this contention on appeal. See *A.L. Dougherty Real Estate Management Co., LLC v. Su Chin Tsai*, 2017 IL App (1st) 161949, ¶ 52 (asserting that a party's failure "to meaningfully develop an argument" results in the party forfeiting that issue on appeal).

¶ 41                      D. Promissory Estoppel Claim (Count VI)

¶ 42    We next turn to Seenu's argument that the circuit court erred in granting summary judgment to Radix on his promissory estoppel claim. "Promissory estoppel is a common-law doctrine adopted to permit the enforcement of promises that are unsupported by consideration, such as gratuitous promises, charitable subscriptions, and certain intrafamily promises." *Matthews v. Chicago Transit Authority*, 2016 IL 117638, ¶ 91. "The doctrine operates to impute contractual stature based upon a promise that is not supported by consideration and to provide a remedy to the party who detrimentally relies on that promise." *Id.* ¶ 93. In other words, "the doctrine is recognized as creating a contract implied in fact, which imposes a contractual duty based on a promissory expression by the promissor that shows an intention to be bound." *Id.* In order to establish a claim for promissory estoppel, the plaintiff must show: "(1) [the] defendant made an

unambiguous promise to [him], (2) [he] relied on such promise, (3) [his] reliance was expected and foreseeable by [the] defendant, and (4) he relied on the promise to [his] detriment." *Id.* ¶ 95.

¶ 43    As we have already concluded in our discussion of Seenu's Wage Payment Act claims that Radix never made an unequivocal promise of a bonus to him, Seenu likewise cannot show that Radix made an unambiguous promise to him for a bonus, as both terms, in essence, have the same meaning. See Black's Law Dictionary (11th ed. 2019) (defining "unequivocal" as "[u]nambiguous"). Because the undisputed facts show that Radix never made an unambiguous promise to him for a bonus, Seenu's promissory estoppel claim fails. Therefore, the circuit court properly granted summary judgment to Radix on Count VI of Seenu's amended complaint.

¶ 44                                    E. Additional Arguments

¶ 45    We additionally note that Seenu contends that the circuit court erred in granting defendants' motion for summary judgment on his Wage Payment Act, breach of contract and promissory estoppel claims when it found that he did not meet the conditions to receive performance bonuses in 2020 and on the basis that he could not quantify his damages. However, as we have concluded that Seenu's Wage Payment Act, breach of contract and promissory estoppel claims all failed for independent and sufficient reasons, we need not discuss these other bases relied upon by the court in granting defendants' motion for summary judgment.

¶ 46                                    F. The Motion to Compel

¶ 47    Related to Seenu's argument that the circuit court erred by granting defendants summary judgment because he could not quantify his damages, Seenu also posits that the court erred when it denied his motion to compel and subsequent motion to reconsider. In that motion, Seenu sought to obtain information about the amounts of bonuses paid to Radix employees prior to 2020, which he claimed would have allowed him to calculate with precision the amount of bonuses owed to

him in 2020. Assuming *arguendo* that the court erred by failing to compel that discovery, any error was harmless because the court's failure to compel had no impact on Seenu's ability to withstand summary judgment based on the reasons we have stated. See *In re K.I.*, 2016 IL App (3d) 160010, ¶ 56 ("Any error in failing to compel discovery is harmless where it does not affect the outcome in the trial court."). Consequently, we need not address whether the court erred by failing to compel discovery about the amounts of bonuses paid to Radix employees prior to 2020, as any such error would have been harmless.

¶ 48                                     III. CONCLUSION

¶ 49    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 50    Affirmed.